**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marty Lee FOSTER,**
**Defendant–Appellant.**

**No. 89–5505.**

United States Court of Appeals,
Fourth Circuit.

Argued July 28, 1989.

Decided March 2, 1990.

Geoffrey Carlyle Mangum, argued and Victor M. Lefkowitz, on brief, Law Firm of Victor M. Lefkowitz, Winston–Salem, N.C. for defendant-appellant.

Lisa Blue Boggs, Asst. U.S. Atty., and Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., for plaintiff-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Marty Lee Foster was convicted of violating 26 U.S.C. § 5861(f) [1] (making a bomb) and was sentenced to 27 months imprisonment, 24 months of supervised release and a fifty dollar special assessment. Foster appeals his sentence. He argues that the district court erred in concluding that Foster's placing the bomb in Michael Brown's car was an assault with a dangerous weapon with intent to do bodily harm under § 2A2.2(a) of the Sentencing Guidelines, in finding that Foster engaged in more than "minimal planning" under § 2A2.2(b)(1), and in finding that Foster brandished or threatened to use a dangerous weapon under § 2A2.2(b)(2). We find no error, and we affirm.

Foster and his girlfriend, Sarah Tatum, lived together from November 1987 to July 1988, at which time their relationship changed and Mrs. Tatum began seeing Michael Brown. On July 28, 1988, Foster saw Mrs. Tatum and Brown together at the Sportsman Lounge in Winston–Salem. Unhappy, Foster confronted the couple when they returned to her residence. Foster left with his shotgun, which he had previously kept at Mrs. Tatum's residence. Fifteen minutes later, he returned to retrieve some of his clothing. Foster again left, only to return later that night. When he returned, he climbed on a grill to look into Mrs. Tatum's bedroom where he saw her and Brown in bed together. Foster then took a metal gas can off of Mrs. Tatum's porch and drove to a convenience store where he purchased a gallon of gasoline and an electrical extension cord. Foster returned to the Tatum residence where he cut the ends off of the extension cord and stripped some of the cord to expose bare wires at both ends. Under cover of night, Foster attached two of the wires at one end to two spark plugs in Brown's car. Foster next splashed gasoline around the back seat of the interior of Brown's car. Foster connected the two wires at the other end and placed them in the gasoline remaining in the can. He then placed the can in the back seat and covered it with Brown's work clothes. Foster then left the area.

The next morning Brown drove to work. When he arrived at work and removed his work clothes, he noticed the homemade bomb and called the police. An Alcohol, Tobacco, and Firearms Agent took custody of the bomb and determined that it had not detonated because Foster had failed to properly ground the wires.

After Foster was arrested and had pleaded guilty, a presentence report was prepared. The presentence report commenced with Sentencing Guideline § 2K2.2 for violations of the National Firearms Act which provides a base offense level of 12 for possession of weapons in violation thereof. Section 2K2.2(c)(1) provides that if the defendant used the weapon in committing or attempting another offense, the applicable guideline for that offense should be used if its base offense level is greater than under § 2K2.2. The presentence report concluded that Foster committed an aggravated assault on Brown and so used § 2A2.2(a) to arrive at a base offense level of 15. The presentence report also found that the assault involved "more than minimal planning" so it increased the base offense level by 2 under § 2A2.2(b)(1). The presentence report increased the base offense level by 3 under § 2A2.2(b)(2)(C), concluding that Foster "brandished" or "threatened" to use a "firearm or other dangerous weapon." The base offense level was reduced by 2 because Foster accepted responsibility under § 3E1.1(a). The resulting base offense level was 18 which, with Foster's zero criminal history for a "criminal history category of I," gave a range of 27 to 33 months under Ch. 5, Part A. Adopting the presentence report as correct, the district court

---

1. Foster pleaded guilty to the offense pursuant to a plea bargaining agreement and does not challenge the validity of the conviction.

sentenced Foster to 27 months imprisonment.

■ Foster challenges three aspects of the sentencing procedure. We first address his argument that the district court erred in finding that his placing of the bomb in Brown's car was an assault with a dangerous weapon with intent to do bodily harm under § 2A2.2.[2] Foster argues both that the bomb was not a dangerous weapon and that he had no intent to harm Brown. He argues that since the bomb was not properly grounded, and therefore did not work, it was not a dangerous weapon. While we acknowledge that what constitutes a dangerous weapon can vary greatly depending on the circumstances, see *United States v. Johnson*, 324 F.2d 264 (4th Cir.1963) (holding that a chair, as used, was a dangerous weapon), we have no doubt that the homemade bomb in this case was a dangerous weapon. Even though improperly wired, the device put Brown in danger. The gasoline bomb could have been ignited from a separate source of spark. Foster also argues that he had no intent to harm Brown but that the bomb was just a warning. Foster claims to have purposely wired the bomb so that it would not go off. The district court rejected Foster's claim that he was merely trying to warn Brown, however. On this largely factual issue, our standard of review is the clearly erroneous standard. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989). We decline to reverse the district court's finding on Foster's intent. Several factors cut against Foster's claim that the bomb was a mere warning. First, placing the bomb in Brown's car was done clandestinely, without a message or any way for Brown to know who planted the bomb or why it was planted. Second, Foster had several opportunities to warn Brown that same night to stay away from Mrs. Tatum and did not. And finally, Foster covered the bomb with some of Brown's work clothing to conceal it. The definition of dangerous weapon in application note 1(d) to Guideline § 1B1.1 is "an instrument capable of inflicting death or serious bodily injury." The gasoline bomb described in this case is certainly a dangerous weapon under that Guideline definition.

■ Foster's second contention is that the district court improperly concluded that the assault "involved more than minimal planning" under § 2A2.2(b)(1). Application note 1(f) to § 1B1.1 defines "more than minimal planning" as

more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.... In an assault, for example, waiting to commit the offense when no witnesses were present would not alone constitute more than minimal planning. By contrast, luring the victim to a specific location, or wearing a ski mask to prevent identification, would constitute more than minimal planning.

In the case at hand, Foster took the gas can, went to buy gasoline and wire, came back to the victim's car and assembled the bomb, placed the bomb in the rear seat of Brown's car, and then concealed the bomb with Brown's clothes. This does not describe an offense committed on the spur of the moment. The district court did not err in its finding that, under the Guidelines, the assault required "more than minimal planning."[3]

___

**2.** We note that the definition of an "aggravated assault" in the Sentencing Guideline's application note is similar to the assault defined in 18 U.S.C. § 113(c).

**3.** We reject Foster's argument that he is subject to double punishment in that his base offense level was increased because the assault required more than minimal planning. The Sentencing Guidelines typically consider the specific offense characteristics in an attempt to form a punishment appropriate for the particular na-

ture of the crime. The Sentencing Commission obviously believed that assaults that required more than minimal planning deserve more punishment. Foster argues he is being punished twice for making the bomb and placing it in Brown's car: once by the district court finding the assault was aggravated and a second time when the district court raised the base offense level by 2 because the assault involved more than minimal planning. Actually Foster is being punished only once. The Guidelines merely require the district court to consider several

28

Foster's final contention is that the district court erred in concluding that Foster "brandished or threatened use of a dangerous weapon" under § 2A2.2(b)(2)(C). Foster contends that the bomb was not a dangerous weapon. Foster also contends that he did not threaten "use" of a dangerous weapon because he merely intended to warn Brown away from Mrs. Tatum. We have previously rejected both Foster's argument that the bomb was not a dangerous weapon and that he merely wanted to warn Brown. Foster did not merely brandish or threaten to use a dangerous weapon, he used one. So there is no error in the district court's increasing Foster's base offense level by 3 under § 2A2.2(b)(2)(C).

The sentence appealed from is accordingly AFFIRMED.

factors, including whether the assault was aggravated and whether it required more than minimal planning, before arriving at a proper sentence. We observe, indeed, that allocation of additional guilt for the more deliberate commission of a crime is entirely consistent with human experience. The difference between murder and manslaughter is an example.