**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey C. SMITH, Defendant–Appellant.**

**No. 90–3606.**

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 1991.

Decided Jan. 14, 1992.*

---

* After oral argument, the court set this case and *United States v. Egan,* No. 90–3008, for consideration in banc. Shortly before the date on which oral argument was to occur, the Supreme Court issued a writ of certiorari to review a case presenting the same issue. *United States v. Wade,* 936 F.2d 169 (4th Cir.1991), cert. granted, — U.S. —, 112 S.Ct. 635, 116 L.Ed.2d 653 (1991). The court then returned this case and *Egan* to the panels for decision, recognizing that the issue will be resolved by higher authority.

Christina McKee, argued, Larry A. Mackey, Asst. U.S. Attys., Indianapolis, Ind., for plaintiff-appellee.

Kevin P. McGoff, argued, J. Richard Kiefer, Safrin, Kiefer & McGoff, Indianapolis, Ind., for Jeffrey C. Smith.

Before CUDAHY and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Section 5K1.1 of the sentencing guidelines provides: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Defendants often estimate the value of their assistance, and the risks they have taken to provide it, more highly than does the prosecutor. Regularly they ask the court to reward their aid with a lower sentence notwithstanding the absence of a motion under § 5K1.1. Jeffrey C. Smith made such a request in this case, to which the district judge replied that "there is no motion from the government, and that's a threshold hurdle." We must decide whether this assessment is correct.

Smith stands convicted under 26 U.S.C. §§ 5841 and 5861(d) of possessing an M–16 automatic rifle, a military weapon stolen from a military depot. After an altercation at a bar, the owner ejected Smith and accompanied him to his truck. Smith snatched a Colt .45 gun from the glove compartment; the owner wrestled the gun away from Smith. The owner told Smith that he would turn the gun over to the police (and did, promptly); Smith's girl-friend rejoined that "we will be back to kill you". On reaching home Smith took a loaded Sig Sauer P226 pistol and holster from his safe. He put on the holster and strapped extra clips of ammunition to the belt. A former gun dealer, Smith fitted the M–16 rifle with the shorter barrel of an AR–15 (so that it would look more intimidating, Smith testified). He stuffed an extra magazine of ammunition for the M–16 into his back pocket. Thus armed like some character from a Mad Max film, he set off for the bar in a car, his girlfriend following in the truck. A patron saw Smith approach, and the owner was waiting at the door; Smith barged in, pointed the M–16 at the owner, and threatened his life before being tackled; Smith fired two shots (hitting only the glass door) as the owner and patron wrested the guns from him. Smith pleaded guilty to possessing the stolen M–16, which he insisted that he would have used only to "persuade" the owner of the bar to return his Colt .45. Our only issues concern the appropriate sentence.

The district judge started with U.S.S.G. § 2K2.1, which addresses weapons offenses, but turned to § 2A2.2, which covers assaults, on the authority of § 2K2.1(c)(2) and § 2X1.1. Section 2K2.1(c)(2) sends the court to § 2X1.1 when "the defendant used or possessed the firearm in connection with commission or attempted commission of another offense", and the "resulting offense level is greater than that determined above." Section 2X1.1 tells the judge to get adjustments to the base score from the table for the real offense. Section 2A2.2 provides a base offense level of 15, with enhancements of 5 for discharging a firearm and 2 for "more than minimal planning". The district court applied both, for a total offense level of 22. The court deducted 2 levels for acceptance of responsibility. Because Smith had no criminal history, the guidelines prescribed a range of 33–41 months. Smith asked the judge to depart downward on the basis of his assistance to the prosecution in trying to track down the thief; the judge refused and sentenced Smith to 36 months' imprisonment,

holding that he lacked authority in the absence of a motion.

We have rejected arguments that § 5K1.1 violates the Constitution by reposing too much power in the Executive Branch. E.g., *United States v. Lewis*, 896 F.2d 246 (7th Cir.1990); *United States v. Valencia*, 913 F.2d 378, 386 (7th Cir.1990); *United States v. Bayles*, 923 F.2d 70 (7th Cir.1991). Smith asks us to hold nonetheless that an arbitrary refusal to make a motion does not block a district judge from departing from the guidelines. Several of our opinions reserve decision on this question. E.g., *Lewis*, 896 F.2d at 249 n. 1.

■ Arbitrariness—that is, unjustified disparities in the treatment of similarly situated persons—is not among the grounds on which to contest an exercise of prosecutorial discretion. Unless the prosecutor acts on forbidden grounds such as race or speech, the court must respect the executive's selection from the menu of crimes with which the defendant could have been charged. *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

Our cases have sidestepped the question whether the prosecutor's decision not to make a § 5K1.1 motion should be treated in the same way as the selection of the charge or (what is perhaps the closest analogy) refusal to make a plea bargain. Now is the time for decision, for the district judge, having told Smith that the lack of a motion from the prosecutor was a stopper, also discouraged him from introducing evidence pertinent to the extent and success of his assistance. We know that Smith set up meetings with the person who gave him the M–16, and that at least one of these meetings put Smith in danger (the supplier correctly suspected that Smith was wired). We also know that the investigation came to naught—Smith blames the investigators, and they blame him. Few details are in the record, and nothing allows us to compare

Smith's assistance with the aid that the United States Attorney for the Southern District of Indiana has deemed sufficient to justify a motion in other cases. We confront a legal issue, just as the district judge made a strictly legal decision.[1]

■ Smith first raises a possibility broached in *Bayles:* that § 5K1.1 does not exhaust the grounds of departure on account of cooperation. Courts may depart if the Sentencing Commission did not adequately consider a circumstance, 18 U.S.C. § 3553(b), and it may be that by writing a policy statement rather than a guideline the Commission has signalled that it does not think its treatment definitive. Whether § 5K1.1 leaves such "flexibility" has divided the courts of appeals. Compare *United States v. White*, 869 F.2d 822, 828–29 (5th Cir.1989) (yes), with *United States v. Garcia*, 926 F.2d 125 (2d Cir.1991) (departure without motion possible for assistance to the judiciary although not for assistance to the prosecutor), with *United States v. Romolo*, 937 F.2d 20, 24–25 (1st Cir.1991), *United States v. Bruno*, 897 F.2d 691, 695 (3d Cir.1990), *United States v. Goroza*, 941 F.2d 905, 908 (9th Cir.1991), and *United States v. Chotas*, 913 F.2d 897, 900 (11th Cir.1990) (no).

Although the use of a policy statement may imply tentative rather than definitive resolution of a question, we believe that the Sentencing Commission adequately considered whether a prosecutorial motion is necessary. Section 5K1.1 is written without leeway; its next door neighbor, § 5K2.0, identifies "some of the factors that the Commission has not been able to take into account fully in formulating the guidelines." There follows a list, §§ 5K2.1–2.15, of items that have not been fully considered, with invitations to courts to depart under circumstances limned but not delimited. Nothing comparable suggests that the terms of departure for assistance to the prosecution have been less than exhaustively canvassed. Congress it-

---

**1.** During the sentencing hearing the judge asked counsel for Smith: "[I]sn't your argument purely a legal argument based on whether this Court has any jurisdiction whatsoever to depart for cooperation by the defendant absent a motion by the government for departure under 5K1?" Counsel replied: "It is, your Honor."

self made departure from a statutory minimum penalty contingent on motion of the prosecutor, 18 U.S.C. § 3553(e), and likewise conditioned a reduction after pronouncement of sentence on a motion. Fed. R.Crim.P. 35(b). The Sentencing Commission followed the statutory model. Section 3553(b) requires a judge to stick to the guidelines once the Commission has covered a subject.

■ That sets up Smith's contention that § 5K1.1 itself allows a court to depart when the failure of the prosecutor to make a motion is arbitrary or in bad faith—and is unconstitutional if it does not allow this flexibility. Finding the power in § 5K1.1 is problematic. Section 5K1.1 does not say that the court may reduce a sentence when it thinks the prosecutor *should* have filed a motion. The Sentencing Commission provides *the prosecutor* a way to facilitate lenity in exchange for assistance. The guideline does not suggest any standards limiting the exercise of the prosecutor's discretion—§ 5K1.1 does not speak to the reasons that inform the prosecutor's decision, and therefore does not authorize review of that decision. There is, in the standard phrase, "no law to apply", and correspondingly no review.

■ Section 5K1.1 tracks three statutes: 18 U.S.C. § 3553(c), 28 U.S.C. § 994(n), and Fed.R.Crim.P. 35(b). The statutes allow a court to give a sentence below a statutory minimum, or to reduce a sentence after its imposition, on motion of the prosecutor. Guidelines that follow a statutory model take the same meaning as the statute. Consider *Chapman v. United States*, — U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). A statute made the sentencing range depend on the weight of a "mixture or substance" containing a drug; the guideline used the same formula to govern the exercise of discretion within the statutory range. The Supreme Court interpreted the statute and, without further analysis, imputed the same meaning to the guideline. Our principal question, then, is whether a court may give a sentence less than a statutory minimum, or reduce a sentence after its imposition, without a

prosecutorial motion. The answer in each case is no. *United States v. Wilson*, 922 F.2d 1336, 1342 (7th Cir.1991) (§ 3553(c)); *United States v. Doe*, 940 F.2d 199, 203 & n. 7 (7th Cir.1991) (Rule 35(b)). Nothing in the text, structure, or background suggests that § 5K1.1 takes a different meaning.

■ Does this understanding pose constitutional difficulties? Opportunities for the prosecutor to grant or withhold boons suffuse the criminal rules. A prosecutor may charge on a greater or lesser offense. The prosecutor may dismiss or reduce charges, with or without a plea bargain, or may insist on a trial of the original charges—and need not justify refusal to accept a proffered plea to lesser charges. *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). A prosecutor may consent under Fed.R.Crim.P. 20 to transfer and plea in another jurisdiction, where the defendant may have lined up a deal—but need not justify refusal to consent. A prosecutor may consent to a bench trial, Fed.R.Crim.P. 23, which the defendant may devoutly wish—but need not state any reason for withholding consent. *Singer v. United States*, 380 U.S. 24, 37, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965). The thread in these and related cases is, as *Singer* recognizes, *id.* at 36–37, 85 S.Ct. at 791, that if the prosecutor withholds his assent to the defendant's demand, the result is a trial according to the law and the Constitution. A verdict and sentence under those rules cannot be called unjust. There is no right to lenity.

So it is here. Smith pleaded guilty. His sentence of 36 months falls at the lower end of the range established by law for persons who commit his transgressions. All the prosecutor can do by withholding a § 5K1.1 motion is insist that Smith be treated according to law, the same as others who committed the same acts and were unlucky enough to have no information of value.

Smith's constitutional argument is a species of substantive due process (he wants a

better result, not different procedures), and as we observed in *Bayles* such claims have fared poorly in recent years. Since then *Chapman* and *Harmelin v. Michigan,* — U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), have joined the throngs holding that defendants have no right to "fair" treatment in sentencing. The Constitution does not require courts to treat every defendant the same way it has treated others similarly situated. A sentencing scheme "not considering individual degrees of culpability would clearly be constitutional." *Chapman,* 111 S.Ct. at 1928. "We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further." *Harmelin,* 111 S.Ct. at 2702. Defendants' right is to be treated according to law—and Smith does not contend that 36 months in prison for using a stolen machine gun to terrorize the occupants of a bar exceeds the limits set by statute or the eighth amendment.

Section 5K1.1 allows the prosecutor to open a door to lenity, which is nothing new. Prosecutors may dispense lenity, a more potent power. Dispensation occurs when the prosecutor elects to bring lesser charges or none at all, and again when the prosecutor decides whether to engage in plea bargaining. Dispensing powers survive conviction. Article II § 2 cl. 1 of the Constitution gives the President "Power to grant Reprieves and Pardons for Offences against the United States". This entails an unreviewable power to reduce a sentence imposed by a court. *Schick v. Reed,* 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974). With or without a guideline, then, the Executive Branch may slice time off a sentence in order to reward cooperation. A United States Attorney is "the hand of the President", *Ponzi v. Fessenden,* 258 U.S. 254, 262, 42 S.Ct. 309, 311, 66 L.Ed. 607 (1922), and § 5K1.1 provides a way to abbreviate a process by which the Executive alone could put a sentence below the guidelines in exchange for assistance. Courts have no such power to disregard statutory (or guideline) minimums in order to promote cooperation, and correspondingly no power to assess the wisdom of the Executive in deciding not to do so.

Failure to move for a reduction is the back end of the decision to select a particular statute under which to prosecute. United States Attorneys have wide choice among laws with different penalty ranges. Judges have little or no say in this, see *Batchelder.* Would judicial power increase if the prosecutor were to announce that in choosing the offense of prosecution he looked to the suspect's assistance? If the prosecutor obtained an indictment on both greater and lesser offenses and decided whether to dismiss the greater charge in light of the defendant's assistance? Neither of these choices could be reviewed for "arbitrariness" in light of decisions such as *Batchelder.* In the end, the prosecutor's decision not to file a motion under § 5K1.1 does nothing except expose the defendant to the punishment the Sentencing Commission thought appropriate for his offense and criminal history. A prosecutor need not prove to a court the propriety of that choice.

Make no mistake, a search for "arbitrariness" or "bad faith" implies substantive power. "Bad faith" is just an epithet attached to conduct that is substantively arbitrary, so it drops out at once. When is refusal to make a motion arbitrary? When the prosecutor treats identical situations differently. Once a prosecutor starts making motions for any defendants who offer aid, it is arbitrary not to make the motion for other defendants who offer equivalent aid, or take equivalent risks, or produce equivalent results. These are different standards, and courts' selection among them would replace the prosecutor's—as it would replace the prosecutor's assessment of the quality of the defendant's assistance. How valuable was the assistance? How valuable was this investigation, compared with others that a prosecutor may seek to encourage by doling out greater rewards for cooperation? All of these are questions of law enforcement policy. Deciding whether to make a § 5K1.1 motion is fundamentally like deciding to prosecute on lesser charges persons who provide more assistance. Such decisions are not reviewable for arbitrariness, and neither is the

prosecutor's decision not to file a substantial-assistance motion. Failure to make a motion accordingly may be reviewed only on the grounds applicable to other exercises of prosecutorial discretion.[2]

A word is in order about a possibility mentioned in some opinions of this and other circuits. Judges have expressed concern that a prosecutor may induce cooperation plus a guilty plea by promising a § 5K1.1 motion and then pull the rug out from under a defendant. May a court depart when a prosecutor has welshed on a promise to file a substantial-assistance motion? This question is not about § 5K1.1 so much as it is about the proposition, established in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that a guilty plea induced by an unkept bargain is involuntary. So if the prosecutor makes and does not keep a promise to file a § 5K1.1 motion, and the promise is material to the plea, the court must allow the defendant to withdraw the plea and start over. A prosecutor who wants to keep the conviction must make the promised motion. That leaves to the prosecutor the decision whether to make the motion, while making clear the consequences.

Smith's additional arguments require less discussion. He contends, for example, that the judge violated the Constitution by taking account (when selecting a sentence within the 33–41 month range) of an incident in which Smith shot a man. Criminal charges were filed; Smith maintained that he fired in self-defense;

charges were dismissed after Smith passed a polygraph exam. Any argument that a judge must disregard prior acts that did not yield a conviction runs headlong into *United States v. Lawrence*, 934 F.2d 868, 873–74 (7th Cir.1991), and *United States v. Fonner*, 920 F.2d 1330, 1332–34 (7th Cir. 1990), among many other cases in this court. Although Smith's position has attracted support on the Ninth Circuit, see *United States v. Brady*, 928 F.2d 844, 850–52 (9th Cir.1991), it has no support here.

As for the 2–point increase reflecting "more than minimal planning": our review is deferential, and we do not think that the district judge committed clear error in concluding that Smith's planning exceeded the norm for aggravated assault. See *United States v. Lennick*, 917 F.2d 974, 979 (7th Cir.1990); *United States v. Ojo*, 916 F.2d 388, 391–92 (7th Cir.1990); *United States v. Foster*, 898 F.2d 25, 27 (4th Cir.1990). Smith planned his return to the bar with care, not only arming himself to the teeth but also modifying the M–16 by changing barrels, a step he believed would increase the victims' fright. He switched cars, apparently hoping to escape detection. (His parting threat would have left the owner on the lookout for the truck.) You can commit assault with a lot less preparation, making the 2–point increase for this offense appropriate.

Appropriate, that is, if the guidelines indeed send the court to § 2A2.2. The assault section provides an increase for planning; the guideline applicable to the possession of weapons does not. The dis-

---

**2.** Accord, *Romolo*, 937 F.2d at 23–24; *United States v. Doe*, 934 F.2d 353, 361 (D.C.Cir.1991). At least one other circuit precludes review for "arbitrariness" or "bad faith" without explicitly adopting the rules applicable to the selection of charges. *United States v. Bruno*, 897 F.2d 691, 696 (3d Cir.1990); *United States v. Gonzales*, 927 F.2d 139, 145 (3d Cir.1991). Three more circuits may take the same position. *United States v. Levy*, 904 F.2d 1026, 1035–36 (6th Cir.1990); *United States v. Long*, 936 F.2d 482 (10th Cir. 1991); *United States v. Alamin*, 895 F.2d 1335, 1337 (11th Cir.1990); *United States v. Chotas*, 913 F.2d 897, 900–01 (11th Cir.1990); *United States v. Villarino*, 930 F.2d 1527, 1529 (11th Cir.1991). Language in the fourth circuit implies that review is impossible even if the prose-

cutor considers race, speech, or other forbidden characteristics. *United States v. Raynor*, 939 F.2d 191, 195 (4th Cir.1991); *United States v. Wade*, 936 F.2d 169 (4th Cir.1991). We do not go so far. The situation in other circuits is cloudy, with many panels holding out the possibility of review for bad faith or arbitrariness while finding none. E.g., *United States v. Agu*, 949 F.2d 63 (2d Cir.1991); *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990); *United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir.1989) (but see *United States v. Hubers*, 938 F.2d 827, 829–30 (8th Cir.1991)); *United States v. Goroza*, 941 F.2d 905, 908 (9th Cir.1991); *United States v. Mena*, 925 F.2d 354, 356 (9th Cir.1991).

trict judge read § 2K2.1(c)(2) as sending it to § 2A2.2 for all purposes. Whether § 2K2.1(c)(2) sends a court *anywhere* depends on the meaning of the final words: "if the resulting offense level is greater than that determined above." Does this require the court to compare the *base* offense levels of the crimes, or the levels adjusted by all specific offense characteristics? It could be read either way; the parties have assumed that it means the latter, which makes a difference because the base offense level of the firearms charge exceeds the base offense level of aggravated assault under § 2A2.2. If the court should have stuck with § 2K2.1, Smith's offense level has been set four points too high. There is a further potential problem: § 2K2.1(c)(2) sends the court not straight to the offense in which the gun was used, but to § 2X1.1. That guideline requires the court to start with the base offense level "for the object offense", § 2X1.1(a), and then to add "adjustments from such guideline for any intended offense conduct". That may mean taking the base offense level from the weapons charge (16 at the time of sentencing) rather than from the assault guideline (15); if so, Smith has gotten off one point too lightly.

Neither of these potential difficulties was raised in the briefs. Smith waived any possible objection to the use of § 2A2.2 by omissions in both the district court and this court, see *United States v. Sergio*, 934 F.2d 875 (7th Cir.1991); *United States v. Herreo*, 893 F.2d 1512, 1540 (7th Cir.1990); the United States surrendered any objection to its use by not taking an appeal. We mention these interpretive difficulties to guard against the impression that we have dealt with them by indirection. *United States v. Belanger*, 936 F.2d 916, 920 (7th Cir.1991), does not require us to reach these questions unbidden. *Belanger* remanded when the defendant was sentenced under the wrong statute, even though neither party caught the problem. It was an example of plain error, one both blatant and highly prejudicial (the difference between a 10–year maximum sentence under the applicable statute and a 30–year mandatory minimum under the statute the dis-

trict court incorrectly applied). What happened to Smith was not plain error and may not have been error, period; we have instead some subtle questions of interpretation that could produce small adjustments in the sentence.

■ One last subject and we are done. Circuit Rule 30(a) requires counsel for appellant to attach to the brief a copy of the district court's written or oral opinion, including the findings required to explain a sentence under the guidelines. *United States v. White*, 888 F.2d 490, 495–96 (7th Cir.1989). Appellate courts need these explanations to understand what is presented for review. You cannot tell whether a district judge has erred without knowing what the judge did and why. Many lawyers file briefs that do not include an opinion or statement of reasons by the district judge. Our clerk's office cannot readily distinguish cases in which there is an explanation that the appellant neglected to attach from cases in which the district court furnished none. To facilitate gathering together all of the district court's opinions, we added Circuit Rule 30(c), which requires counsel to include with the brief a certificate that the appendix contains all of the materials required by Rule 30(a) and (b). The clerk rejects any brief lacking this certificate, the omission of which is a telltale sign that counsel has not read (and therefore has not followed) our rules.

Kevin P. McGoff of Indianapolis, representing Smith, filed a brief without the Rule 30(c) certificate. The brief also omitted the district court's statement of reasons for the sentence. Our clerk's office rejected this brief as deficient, pointing to Rule 30. Instead of amending the brief to comply with the rules, McGoff pasted into the table of contents a sticker stating: "The Appendix contains all materials required by Parts (a) and (b) of Circuit Rule 30." The clerk then accepted the brief.

■ McGoff's certificate is false. When asked at oral argument for an explanation, McGoff had none. We cannot fathom why a lawyer, alerted to a rule, would fail to correct the shortcoming and instead

certify that he has complied in full. *White* reminds counsel that "[f]alse certificates and missing explanations are adequate reasons summarily to affirm the judgments without attempting to reconstruct the missing materials." 888 F.2d at 496. See also, e.g., *Mortell v. Mortell Co.*, 887 F.2d 1322, 1327 (7th Cir.1989) (summarily affirming on this ground); *Teitelbaum v. Curtis Publishing Co.*, 314 F.2d 94 (7th Cir.1963) (same). We have been reluctant to employ this sanction in criminal cases, however, preferring to visit the consequences on the lawyer rather than the client. *In re Mix*, 901 F.2d 1431 (7th Cir.1990). Time in jail is disproportionate to this delict—and summary affirmance might well be followed by a collateral attack on the adequacy of counsel, reopening the subject. Although we have decided Smith's appeal on the merits, a sanction against counsel may well be appropriate. We shall open a proceeding under Fed.R.App.P. 46(c). McGoff has 15 days to show cause why sanctions should not be imposed.

Affirmed.

CUDAHY, Circuit Judge, concurring in the judgment.

Although I agree that Mr. Smith's sentence should be affirmed, I do not join the majority's discussion of section 5K1.1 of the sentencing guidelines. In any event, I think this discussion is dictum. The majority points out that the district judge did not permit Smith to introduce evidence of his cooperation, but neither has Mr. Smith made a showing of arbitrariness or bad faith in the prosecutor's decision not to make a section 5K1.1 motion. "Arbitrariness" in this context seems to me akin to bad faith and there is no showing of improper motive on the part of the prosecutor. The majority equates "arbitrariness" with unjustified disparity in treatment, no matter what the prosecutor's intentions. This interpretation, which I think unworkable, explains the opinion's conclusion that traditional equal protection analysis would be enough to check the prosecutor's decision.

I believe that "arbitrary or in bad faith" is the proper standard for review of the prosecutor's failure to make the motion in question. *See United States v. Doe*, 940 F.2d 199, 206 (7th Cir.) (Cudahy, J., concurring), *cert. denied*, —— U.S. ——, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991). The question is of substantial moment throughout the circuits, and this position has found support in at least three other circuits. *See United States v. Agu*, 949 F.2d 63, 67 (2d Cir.1991); *United States v. Rexach*, 896 F.2d 710, 713–15 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir.1989), *cert. denied*, 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990); *United States v. Goroza*, 941 F.2d 905, 908 (9th Cir.1991) (per curiam); *United States v. Mena*, 925 F.2d 354, 356 (9th Cir.1991). The question has been left open in at least two decisions in our circuit, *United States v. Donatiu*, 922 F.2d 1331, 1334–35 & n. 3 (7th Cir.1991), and *United States v. Lewis*, 896 F.2d 246, 249 n. 1 (7th Cir.1990). The argument for a bad faith exception has been made by distinguishing the decision to prosecute, which is subject to numerous subsequent checks (the requirement of grand jury indictment, the need for proof beyond a reasonable doubt, etc.), from the decision not to move for a downward departure (which is subject to no systemic checks).

The majority's discussion of the current state of substantive due process and of sentencing jurisprudence is inapposite. While a guarantee of individualized treatment in sentencing may be written out of the statute books, *but see* 28 U.S.C. § 994(n) (sentencing commission must include departure possibility for substantial assistance), due process conditions all aspects of a criminal proceeding, including sentencing. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1203, 51 L.Ed.2d 393 (1977); *United States v. Doe*, 934 F.2d 353, 356 (D.C.Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991). Moreover, even if the section 5K1.1 decision is analogous to other prosecutorial decisions, this does not insulate it from meaningful review. *Doe*, 934 F.2d at 361 (citing

*Rexach, United States v. Bayles*, 923 F.2d 70, 72 (7th Cir.1991), and *Mena* as having "reached similar conclusions"). I believe that section 5K1.1, if interpreted so as never to allow for a substantial-assistance departure absent a motion of the government, would potentially violate due process in cases of prosecutorial bad faith or arbitrariness. However, the relevant provisions can reasonably be construed to avoid any constitutional infirmity.

The majority seems to believe that section 5K1.1 is essentially a means by which the prosecutor may dispense lenity in exchange for assistance. As I read the guideline, it provides the *court* with the authority to grant a reduction, with the prosecutor as something of a "fact finder" who determines initially whether the assistance was substantial. The Commentary to section 5K1.1 supports this interpretation:

> The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above. The sentencing judge must, however, state the reasons for reducing a sentence under this section.

U.S.S.G. § 5K1.1, Comment (Background).

The majority notes that section 5K1.1 "tracks" three statutes: 18 U.S.C. § 3553(e), Fed.R.Crim.P. 35(b) and 28 U.S.C. § 994(n). It discusses the first two of these statutes, neither of which applies in this case. (Section 3553(e) deals with sentences below a statutory minimum and Rule 35(b) with reduction of a sentence after its imposition.) Section 994(n), which the majority does not discuss, contains Congress's authorization for the Sentencing Commission to adopt section 5K1.1. It provides:

> The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's

substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. § 994(n). This provision was enacted as part of the same piece of legislation as section 3553(e), which parallels the language of section 5K1.1; in fact, the two sections were immediately adjacent to each other in the legislation. *See* Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570 §§ 1007(a), 1008(1), 100 Stat. 3207–7 (October 27, 1986). Since Congress obviously knew how to require a government motion as a strict prerequisite to sentence reduction, and did so with respect to mandatory-minimum departures (§ 3553(e)) but not with respect to guideline-range departures (§ 994(n)), Congress apparently did not want the motion requirement transposed onto section 994(n). For a more thorough presentation of this argument, see Judge Clark's opinion in *United States v. Chotas*, 913 F.2d 897, 902–05 (11th Cir.1990) (Clark, J., concurring in part and dissenting in part), *cert. denied*, —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991).

Moreover, section 5K1.1 is a "policy statement," not a guideline, and therefore may well not be binding on the sentencing judge. *See United States v. Gutierrez*, 908 F.2d 349, 353–54 (8th Cir.1990) (Heaney, J., dissenting), *vacated on reh'g en banc*, 917 F.2d 379 (8th Cir.1990). While the authoritative status of guideline policy statements is unclear, such provisions are apparently designed to give courts "greater flexibility." *United States v. Bayles*, 923 F.2d 70, 71 (7th Cir.1991) (quoting U.S.S.G. ch. 7, introductory note 3(a)). The majority moves away from any flexibility, rejecting even a narrow bad faith exception to the government motion requirement.

In addition, U.S.S.G. § 1B1.4, a "General Application" guideline, provides that in determining whether departure is warranted, a court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." The majority turns a policy statement into a vehicle for trashing not only this fundamental guideline, but also a Con-

gressional statute, and possibly due process.

In another connection I agree with the majority that the summary affirmance of criminal cases is not an appropriate sanction for violation of Circuit Rule 30(c).