28 F.3d 1217
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Michael MATTINGLY, Defendant/Appellant.
 No. 93-3943.
 United States Court of Appeals, Seventh Circuit.
 Argued June 15, 1994.
Decided July 11, 1994.
 
 Before ESCHBACH, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Michael Mattingly, a student at the University of Illinois at Urbana-Champaign, financed his gambling habit as well as trips to Florida and Washington, D.C., by robbing banks in Champaign. He robbed the Busey Bank of over $17,000 on December 31, 1992; the American Savings Bank of $8692 on April 15, 1993; and the First Federal Bank of over $16,000 on June 7, 1993. During the third robbery, Mattingly picked up a metal pan that one of the bank's employees had brought to work, leaving a fingerprint. The FBI used the fingerprint to identify Mattingly as the robber. After learning that the FBI had a warrant for his arrest, Mattingly turned himself in and confessed to the three bank robberies. Mattingly admitted to carrying a .25 caliber semi-automatic handgun during the robbery of the Busey Bank and to carrying a Cobra M-11 9mm machine pistol during the other two robberies.
 
 
 2
 Mattingly was charged in each of three indictments with one count of aggravated bank robbery, see 18 U.S.C. Sec. 2113(a) and (d), and one count of knowingly using or carrying a firearm during a crime of violence, see 18 U.S.C. Sec. 924(c)(1). Mattingly pleaded guilty to all three bank robberies and to knowingly carrying a firearm during the third bank robbery. The district court and the parties agreed with the probation office that the proper sentencing range was 78 to 97 months' imprisonment for the bank robberies, plus a consecutive term of 60 months' imprisonment for the firearm offense.
 
 
 3
 At his sentencing, Mattingly urged the district court to depart downward from the sentencing range on three grounds: (1) his criminal behavior was "aberrant"; (2) he voluntarily surrendered to the FBI, returned the ill-gotten proceeds to the banks, and assisted the FBI in its investigation of all three bank robberies; and (3) he committed the bank robberies in an unsophisticated manner. The district court declined to depart downward from the sentencing range and imposed a total sentence of 138 months' imprisonment: three concurrent terms of 78 months for the bank robberies plus a consecutive term of 60 months' imprisonment for the firearm offense. This was the lowest possible sentence within the guideline sentencing range.
 
 
 4
 In this appeal, Mattingly claiming that the district court mistakenly believed that it lacked the authority to depart downward from the guideline sentencing range on account of his "aberrant" criminal behavior, his cooperation with the FBI, and the unsophisticated manner in which he committed the third bank robbery, and that the court should have exercised its authority to depart downward on these grounds. We affirm the sentencing judgment of the district court.
 
 
 5
 We lack jurisdiction to review a district court's discretionary refusal to grant a downward departure. United States v. Gulley, 992 F.2d 108, 111 (7th Cir.1993); United States v. Franz, 886 F.2d 973, 978 (7th Cir.1989). But we have jurisdiction to review a refusal to grant a downward departure if the refusal was not an exercise of discretion but instead was based on a conclusion by the district court that it lacked the authority to depart. United States v. Poff, 926 F.2d 588, 591 (7th Cir.), cert. denied, 112 S.Ct. 399 (1991). In such a case the defendant's claim is that the district court's belief that it could not depart was erroneous, which is tantamount to a claim that the sentence "was imposed in violation of law." 18 U.S.C. Sec. 3742(a)(1).
 
 
 6
 In sentencing Mattingly, the district court stated:
 
 
 7
 This is a heart-rending task, and like [defense counsel] Mr. Mejia, I have never seen a case like this before and I have been around longer than Mr. Mejia. Unfortunately, most unfortunately, the guidelines don't provide for a departure in a case such as this. I am forced with that conclusion.
 
 
 8
 In the statements concerning departures that are contained in the guidelines' manual, the Commission observes that it has not dealt with the single act of aberrant behavior that may justify departures. And were I confronted with a single act of aberrant behavior, I might have a different case before me. But I have three armed bank robberies.
 
 
 9
 The policy statements that the Commission has made concerning specific offender characteristics say that there is a general inappropriateness for considering the defendant's educational/vocational skills, employment record, family ties, responsibilities, and community ties in determining what sort of a sentence should be imposed.
 
 
 10
 As [AUSA] Mr. Cox pointed out in his statement for the government, and Mr. Mejia agrees, the Executive has exercised a great deal of discretion in dismissing the charges in Count 2 of the second and third indictments which would have resulted in imprisonment of over 40 years.
 
 
 11
 The nature of the offenses compel me to the conclusion that I cannot depart from what is now as minimal an approach to these offenses as is possible. I think of the potential that existed for harm and violence, the victim's statements of intimidation.... I think I would be derelict in departing more than the United States Attorney already has departed in the case.
 
 
 12
 Final Disposition, Dec. 1, 1993, Tr. at 34-35. Mattingly argues, on the basis of these statements, that the district court failed to recognize its discretion to depart from the sentencing guideline range. The government responds that the statements show that the district court recognized its discretion to depart from the guideline range but decided that departure was not called for in this case.
 
 
 13
 The district court's statement that "were I confronted with a single act of aberrant behavior, I might have a different case before me[, b]ut I have three armed bank robberies," is susceptible to two interpretations: (1) Mattingly's three bank robberies over a six-month period of time did not constitute a "single act"; and (2) the bank robberies were not "aberrant" for Mattingly. Under the second interpretation, the decision not to depart was an exercise of discretion and, as such, is not reviewable. Under the first interpretation, however, the decision not to depart is reviewable because it was the product of a belief by the district court that it lacked legal authority to depart. See United States v. Smith, 953 F.2d 1060, 1063 n. 1 (7th Cir.1992). We adopt the first interpretation of the district court's statement and review the refusal to depart based on a "single act of aberrant behavior."
 
 
 14
 The district court correctly concluded that it lacked the legal authority to depart in this case based on a "single act of aberrant behavior." In United States v. Carey, 895 F.2d 318, 325 (7th Cir.1990), we observed that "[a] single act of aberrant behavior ... generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable."
 
 
 15
 That the phrase "a single act of aberrant behavior" means a single act of aberrant behavior is clear from United States v. Andruska, 964 F.2d 640 (7th Cir.1992). In that case, we reversed the grant of a downward departure for aberrant behavior based on the defendant's concealment of a known fugitive for three months. We reasoned that the defendant's continued involvement with the fugitive after learning that he was wanted by law enforcement authorities, her efforts to help him evade the authorities, her refusal to acknowledge that she had engaged in wrongful conduct, and the repeated nature of her actions, precluded her criminal conduct from being classified as "aberrant."
 
 
 16
 In Andruska, we explicitly rejected the Ninth Circuit's more expansive view, see United States v. Takai, 930 F.2d 1427 (9th Cir.1991), superseded by United States v. Takai, 941 F.2d 738 (9th Cir.1991), of what constitutes a "single act of aberrant behavior." In Takai, two defendants had conspired and bribed an immigration official in an attempt to obtain green cards for relatives and friends. The Ninth Circuit held that the defendants' behavior, which involved multiple incidents over an approximately six-week period, constituted a "single act of aberrant behavior." The court stated:
 
 
 17
 [I]f one lays stress on the phrase "single act" it appears that each [defendant] fails the test because each obviously performed a whole series of actions leading up to the final action.... On the other hand, it is fair to read "single act" to refer to the particular action that is criminal, even though a whole series of acts lead up to the commission of the crime. In this case, there are two crimes--the forming of the conspiracy and the offer of the [bribe]. The conspiracy and the offer are so closely related that for purposes of deciding whether they were aberrant they constitute a single act.
 
 
 18
 Takai, 941 F.2d at 741-42.
 
 
 19
 We concluded that Ninth Circuit's approach--the so-called "aberrant behavior spectrum"--was "too broad an interpretation of the aberrant behavior rationale." Andruska, 964 F.2d at 645. Indeed, the Ninth Circuit's approach reads "single act" out of the phrase, "single act of aberrant behavior." Although, as Mattingly asserts, under the Ninth Circuit's approach his three bank robberies could conceivably constitute a "single act of aberrant behavior," the same cannot be said under this circuit's approach. In this circuit (as well as in the Fourth, see United States v. Glick, 946 F.2d 335, 338-39 n. * (4th Cir.1991) and Eighth Circuits, see United States v. Garlich, 951 F.2d 161, 164 (8th Cir.1991)), three bank robberies over a six-month period cannot, as a matter of law, be considered a "single act of aberrant behavior." For even if the robberies might be considered "aberrant" in the sense that they were inconsistent with a defendant's background and past behavior with his family and friends, three robberies involve more than a "single act."
 
 
 20
 Mattingly also argues that the district court erred in refusing to depart based on his voluntary surrender and cooperative efforts. Even if we have jurisdiction to review the refusal to depart based on these factors, the refusal to depart was not clearly erroneous. The provision in the Guidelines for acceptance of responsibility, U.S.S.G. Sec. 3E1.1, adequately takes into account Mattingly's voluntary surrender. The case relied upon by Mattingly for the proposition that his voluntary surrender justifies a departure, United States v. Gerard, 782 F.Supp. 913 (S.D.N.Y.1992), is readily distinguishable from this case. In Gerard, a downward departure was granted where the defendant confessed her mail fraud scheme and attempted to make restitution to the victims before the scheme was discovered by law-enforcement authorities. The court found that this, along with the defendant's cooperation with the government's investigation of the mail fraud scheme and the fact that she was the only source of financial support for two teenagers, warranted a downward departure. Id. at 915. By contrast, Mattingly gave himself up to the FBI only after learning from a "Crimestoppers" television broadcast that the FBI was looking for him. Moreover, the additional factor that justified a departure in Gerard, the defendant's status as the sole source of financial support for her family, is missing in this case.
 
 
 21
 A departure based upon Mattingly's cooperation with the government is foreclosed by our decision in United States v. Smith, 953 F.2d 1060 (7th Cir.1990), which holds that U.S.S.G. Sec. 5K1.1, exhausts the grounds of departure on account of a defendant's cooperation with law-enforcement authorities. Section 5K1.1 provides that a downward departure may be made "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." The government in this case did not make such a motion. And for a good reason: Mattingly's assistance, even if substantial, did not relate to the investigation or prosecution of another person.*
 
 
 22
 Finally, even if we have jurisdiction to review the district court's refusal to depart based upon the unsophisticated manner in which Mattingly committed the third bank robbery, the refusal to depart was not clearly erroneous. Mattingly relies on United States v. Jahmohan, 909 F.2d 61 (2d Cir.1990). The defendant in that case was convicted of attempting to bribe a New York City Environmental Police Officer. The Second Circuit held that the defendant's employment history and stable background, combined with the fact that he used a personal check for the attempted bribe, warranted a downward departure. According to the Second Circuit, the defendant's unusually unsurreptitious conduct in undertaking the attempted bribery constituted a mitigating factor that was not considered by the Sentencing Commission in promulgating the Guidelines. Id. at 65. Here, Mattingly carefully planned the third bank robbery by studiously observing the bank for several days in advance of the robbery to learn the routine followed at the bank and by arranging to borrow a firearm to carry during the robbery. Mattingly's conduct was not unsurreptitious.
 
 
 23
 The sentencing judgment of the district court is AFFIRMED.
 
 
 
 *
 Mattingly's cooperation with the government in the investigation of his own crimes is adequately taken into account in subpart (b) of U.S.S.G. Sec. 3E1.1, which provides a one-level decrease if: (1) the offense level prior to the two-level decrease for acceptance of responsibility is level 16 or greater; and (2) the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely providing complete information to the government concerning his own involvement in the offense or by timely notifying authorities of his intention to plead guilty. The court granted Mattingly this decrease