UNITED STATES of America, Appellee,

v.

Luz Maria AMPARO, a/k/a Luz Maria
Amparo Sanchez, Defendant,
Appellant.

No. 91–2010.

United States Court of Appeals,
First Circuit.

Heard March 5, 1992.
Decided April 8, 1992.

Irma R. Valldejuli, for defendant, appellant.

Ivan Dominguez, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, FEINBERG,[*] Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

In an effort to invest Dame Fortune with partiality toward their venture, a group of would-be drug smugglers paid a visit to a sorceress before leaving their native land. The visit was unrewarding: upon arriving in the United States, the three principals were apprehended, indicted, and found guilty of various trafficking charges. One defendant, Luz Maria Amparo Sanchez (Amparo), claiming that her involvement was coerced, now repairs to an appellate venue. This visit, too, proves unrewarding.

I.

We begin by recounting certain (essentially uncontradicted) facts which serve to put Amparo's appeal into initial perspective.

In November 1990, appellant, an attorney in the Dominican Republic, was invited to travel to Puerto Rico with an acquaintance, Miguelina Jimenez. When Jimenez arrived at appellant's home en route to the airport, she was accompanied by a stranger, Humberto Davis. Before going to the airport, the trio stopped at a motel. There, Davis provided Jimenez with a quantity of cocaine. (The evidence showed that Jimenez had previously agreed to smuggle drugs in the course of her journey to the United States.) The contraband being bulkier than anticipated, it was decided that Amparo would carry some of the cocaine. A package was strapped to her torso beneath her corset. The threesome then drove to the home of a local sorceress who was apparently engaged to assure Amparo (with too sanguine an air, as matters turned out) that the trip would be successful. Davis, Jimenez, and Amparo thereafter boarded their flight. The cocaine was not listed on the aircraft's cargo manifest.

Upon arriving in Puerto Rico, Davis was detained in the airport's immigration area and questioned about his frequent entries into the United States. The two women cleared immigration but were kept in the customs area when routine questioning evoked a degree of suspicion. Although inspection of the women's luggage yielded no contraband, pat-downs of their persons uncovered the packages of cocaine. Following a positive field test of the white powder contained in the packages and appellant's identification of Davis as the plot's ringleader, the wayward travellers were arrested.

All three suspects were charged with aiding and abetting the importation of cocaine, possessing the drug with intent to distribute it, and related offenses.[1] Jime-

1. The pertinent portions of the statutes mentioned in the indictment read as follows:

[I]t shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
21 U.S.C. § 841(a)(1) (1982).

It shall be unlawful for any person to bring or possess on board any ... aircraft ... arriv-

nez pled guilty. Davis moved successfully for severance; he was tried separately and convicted. The appellant was tried last. The jury found her guilty on all counts. After imposition of sentence, this appeal ensued.

## II.

■ On the merits, appellant presents this court with what is essentially a claim that the prosecution's evidence was insufficient to convict. She preserved the point, moving for judgment of acquittal at the close of the government's case in chief and at the close of all the evidence. The district court denied the motions. While appellant challenges both rulings, we need only address the second. A defendant who elects to adduce evidence in her defense after the district court has denied a Rule 29 motion made at the close of the government's case is deemed to have abandoned the earlier motion and waived any objection to its denial.[2] *See United States v. Clotida,* 892 F.2d 1098, 1102 (1st Cir.1989); *United States v. Lopez,* 576 F.2d 840, 842 (10th Cir.1978); *United States v. Belgrave,* 484 F.2d 915, 916 & n. 1 (3d Cir.1973).

The standard of review is a familiar one. We must survey the totality of the evidence, scrutinizing the record in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the verdict. *See, e.g., United States v. Maraj,* 947 F.2d 520, 522–23 (1st Cir.1991); *United States v. Victoria–Peguero,* 920 F.2d 77, 86–87 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991). So long as the record, read in this fashion, would have allowed a rational jury to conclude beyond a reasonable doubt that appellant was guilty of the offenses charged, we must affirm a denial of the motion for judgment of acquittal.

■ In this case, the evidence tendered by the government was powerful. It showed that appellant, at the time of her arrest, was knowingly carrying cocaine; that despite her avowed intention of taking a leisurely jaunt to Puerto Rico, her airline ticket bore an itinerary starting in the Dominican Republic, passing through Puerto Rico, and ending in Maryland; that both Jimenez and Davis had booked the same itinerary; and that appellant had packed a winter coat in her luggage (thus lending credence to the notion that she was not bound for the balmy beaches of San Juan, but for a chillier climate). Moreover, appellant indicated upon initial questioning that she had agreed to transport drugs for Davis in exchange for a payment of $1,000. Based upon the evidence offered by the government, a rational jury could easily have concluded, beyond any shadow of a doubt, that Amparo was guilty of the crimes with which she was charged.

Nor did the evidence presented by the defense sufficiently alter the calculus. The linchpin of Amparo's defense was the testimony of her friend and codefendant, Miguelina Jimenez. Jimenez testified that she led Amparo to believe that the trip would be in the nature of a junket to Puerto Rico; she was planning to buy clothing there for resale in the Dominican Republic and Amparo would assist her. Jimenez further testified that Amparo was unaware of a more nefarious purpose until the cocaine was produced at the motel. Jimenez stated that Amparo did not wish to carry drugs but did so because Jimenez told her that, otherwise, Davis would hurt her or her children. Amparo also testified. In general, her testimony corroborated Jimenez's account. She admitted that she had

---

ing in or departing from the United States ... a controlled substance ... unless such substance or drug is part of the cargo entered in the manifest ... of the ... aircraft....
21 U.S.C. § 955 (1982).
   It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].

21 U.S.C. § 952(a) (1982 & Supp. V 1987).
   Whoever commits an offense against the United States or aids, abets, ... or procures its commission, is punishable as a principal.
18 U.S.C. § 2(a) (1988).

**2.** In this case, the rule makes no practical difference. The evidence, whether limited to that presented in the government's case in chief or viewed as a whole, easily passes Rule 29 muster.

sentiently carried cocaine into the United States, but asserted that she was coerced into doing so by Davis (who was armed and insistent). In short, her defense was that she acted under duress.

■ To maintain the defense of duress, a defendant must offer evidence sufficient to show three things: (1) that she acted under an immediate threat of serious bodily injury or death, (2) that she had a well grounded belief that the threat would be carried out, and (3) that she had no reasonable opportunity to escape or otherwise to frustrate the threat. *See United States v. Johnson,* 956 F.2d 894, 897–98 (9th Cir.1992); *United States v. Santos,* 932 F.2d 244, 249 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 592, 116 L.Ed.2d 617 (1991); *United States v. Bakhtiari,* 913 F.2d 1053, 1057 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Scott,* 901 F.2d 871, 873 (10th Cir.1990); *United States v. Wells,* 773 F.2d 230, 231 (8th Cir.1985) (per curiam). The defendant has a burden of producing enough evidence to support a finding of duress. *See United States v. Bailey,* 444 U.S. 394, 415–16, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980) (where the defendant's evidence, even if believed, fails to establish all the elements of a duress defense, the trial court need not submit the issue to the jury); *United States v. Bifield,* 702 F.2d 342, 346 (2d Cir.) (same), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983).

■ If the defendant succeeds in satisfying this entry-level burden, and the charged crime requires *mens rea,* the government must prove beyond a reasonable doubt that the defendant's criminal acts were not in fact the product of duress. *See Santos,* 932 F.2d at 249; *United States v. Scott,* 901 F.2d 871, 873 (10th Cir.1990); *United States v. Beltran–Rios,* 878 F.2d 1208, 1214 (9th Cir.1989); *cf. United States v. Rodriguez,* 858 F.2d 809, 814–15 (1st Cir.1988) (while defendant must shoulder an entry-level burden before an entrapment defense reaches the jury, "the defendant's burden of production does not shift the

historic burden of proof"). The government can overcome this obstacle if it proves that the defendant's evidence is bogus in some material respect, say, by showing that no threat occurred, or that the defendant's fear was unreasonable, or that the defendant had an opportunity to escape but did not exercise it. *See, e.g., Santos,* 932 F.2d at 249; *Beltran–Rios,* 878 F.2d at 1214.

Here, although Amparo carried her entry-level burden, there was ample room for the jury to conclude that the claimed duress was more apparent than real. For one thing, Jimenez's testimony was open to grave doubts. She did not come forth with her tale of coerced cooperation until after the two women had been incarcerated together for a substantial period of time; and on cross-examination, she conceded that Davis never actually threatened Amparo. For another thing, Amparo's story was far from ironclad. Originally, she admitted that she agreed to help the smugglers in consideration for a cash payment; the jury could have believed this admission rather than her later, more flattering, version of the relevant events. Then, too, the government adduced persuasive rebuttal testimony indicating that Amparo had several opportunities, both on the aircraft and upon arrival in Puerto Rico, to seek assistance without alerting either Davis or Jimenez, but stood pat. No more was exigible. *See Victoria–Peguero,* 920 F.2d at 86–87 (to sustain a conviction, the proof "need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt").

In sum, this record was not written, as appellant would have it, in black and white. It was written in countless shadings of gray. The facts we have mentioned, coupled with other evidence, furnished an adequate predicate for an outright rejection of appellant's defense. A reasonable jury, drawing plausible inferences and making permissible credibility judgments, could certainly have concluded that appellant willingly entered into a scheme to smuggle drugs and concocted a tale of coercive con-

duct as a means of attempting to evade her just deserts. The court below did not err in refusing to acquit Amparo.

### III.

Following Amparo's conviction, the district court sentenced her to sixty-three months in prison.[3] Appellant challenges the sentence on three grounds.

### A.

Appellant's flagship argument is that the lower court erred in failing to depart downward on the ground of duress under U.S.S.G. § 5K2.12.[4] We agree with appellant that the jury verdict did not foreclose this possibility. As the very language of the guideline indicates, the type and kind of evidence necessary to support a downward departure premised on duress is somewhat less than that necessary to support a defense of duress at trial. Hence, a jury's rejection of a duress defense does not necessarily preclude a sentencing court's downward departure under section 5K1.12. *See Johnson,* 956 F.2d at 898, *United States v. Cheape,* 889 F.2d 477, 480 (3d Cir.1989); *cf. United States v. Whitetail,* 956 F.2d 857, 862–63. (8th Cir.1992)

Although circumnavigating the Scylla of estoppel by verdict, appellant's argument is nonetheless engulfed in the Charybdis of appellate jurisdiction. It is an immutable verity that "absent extraordinary circumstances, a criminal defendant cannot ground an appeal on the district court's discretionary decision not to undertake a downward departure from the sentencing range indicated by the guidelines." *United States v. Ruiz,* 905 F.2d 499, 508–09 (1st Cir.1990); *accord United States v.*

*Lauzon,* 938 F.2d 326, 330 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 450, 116 L.Ed.2d 468 (1991); *United States v. Romolo,* 937 F.2d 20, 22 (1st Cir.1991); *United States v. La Guardia,* 902 F.2d 1010, 1012 (1st Cir.1990); *United States v. Pighetti,* 898 F.2d 3, 4–5 (1st Cir.1990).

To be sure, appellate jurisdiction will lie if the record supports an inference that the sentencing court's failure to depart did not represent an exercise of fact-finding or discretion, but was instead the product of the court's miscalculation about whether it possessed the authority to depart. *See Lauzon,* 938 F.2d at 330; *Romolo,* 937 F.2d at 22; *United States v. Rushby,* 936 F.2d 41, 42 (1st Cir.1991). In the case at hand, however, this exception has no bearing: Amparo does not theorize that the sentencing judge was unaware of his power to depart or misconceived the legal standard.[5] Her brief, fairly read, merely argues that the court, in failing to soften the sentence because of the duress to which she had been subjected, was stupendously wrong. This sort of hyperbole amounts to nothing more than a challenge to the court's discretionary decision not to depart. It follows inexorably that we lack jurisdiction to review the assigned error.

### B.

In her brief on appeal, Amparo grouped her two remaining claims of error. For ease of discussion, we will do likewise. These claims both involve U.S.S.G. § 5K1.1, which allows—but does not require—a downward departure in return for a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense...." Appellant contends that, by implicating

---

**3.** The sentence, which included a four-year term of supervised release, was within the guideline sentencing range.

**4.** The guideline provides in material part:
  If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Ordinarily coercion will be sufficiently serious to warrant departure only

when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party....
U.S.S.G. § 5K2.12 (p.s.).

**5.** At any rate, such a contention would be bootless. When Amparo was sentenced, the district judge clearly stated that he had reached an independent "determination that there was no duress," separate and apart from the jury's determination.

Davis, she earned the right to such a congiary.

The guideline could not be more clear. It states that such a departure is available "[u]pon motion of the government...." *Id.* As appellant acknowledges, we have squarely held that a sentencing court may not depart on the basis of substantial assistance except when the government so requests. *See United States v. Romolo,* 937 F.2d at 23 ("We ... hold[ ] that a district court may not depart pursuant to section 5K1.1 absent a government motion seeking such a departure."); *see also United States v. Drown,* 942 F.2d 55, 56 n. 2 (1st Cir.1991); *United States v. Ocasio,* 914 F.2d 330, 333 (1st Cir.1990); *La Guardia,* 902 F.2d at 1013–16.[6] Even if the government acts arbitrarily in deciding not to request a substantial-assistance departure, it is settled in this circuit that the rule does not change. *Romolo,* 937 F.2d at 24; *accord United States v. Smith,* 953 F.2d 1060, 1065–66 (7th Cir.1992).

Faced with this imposing precedential array, appellant attempts to squeeze into a small aperture left open in *Romolo.* In that case, we wrote:

> This appeal does not raise, and consequently we do not address here, whether a defendant might be entitled to relief from the prosecutor's eschewal of a section 5K1.1 motion if there were evidence that the prosecutor refused to file such a motion in contravention of constitutionally protected rights, such as race or religion. That type of misconduct would appear to constitute an appealable event wholly separate from considerations associated with the proper application of the guidelines.

*Romolo,* 937 F.2d at 24 n. 4. Seizing on this language, appellant argues that the only reason the government chose not to seek a downward departure in her case was because she exercised her right to a jury trial and that, therefore, the refusal should be appealable.

Ingenious though this argument may be, it is unavailing. Here, as in *Romolo* itself, there is absolutely no evidence to suggest that the government failed to request a downward departure in retaliation for the defendant's exercise of her constitutional rights. A wholly conclusory allegation, unsupported either by proven facts or by reasonable inferences from proven facts, cannot suffice to overcome the force of the "government motion" requirement. Were the rule otherwise, then every defendant could claim such a violation in every case, rendering the requirement nugatory.

Amparo has one more string to her bow. She tells us that, given her sterling cooperation, the government's declination to file a section 5K1.1 motion was, at the very least, arbitrary; and that, therefore, we should await the Court's decision in *Wade,* discussed *supra* note 6, before upholding her sentence. We might well stay our hand in a closer case. But, Amparo's cooperation is more a matter of rodomontade than of substance. She did not testify against Davis or assist in his prosecution in any way.[7] By the time she identified him as the ringleader, he had already been detained in the immigration area. At sentencing, the prosecutor explained convincingly why the United States regarded Am-

---

**6.** Our holding conforms with the weight of existing authority. *See, e.g., United States v. Smith,* 953 F.2d 1060, 1063–66 (7th Cir.1992); *United States v. Doe,* 934 F.2d 353, 361 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991); *United States v. Chotas,* 913 F.2d 897, 900 (11th Cir.1990) (per curiam), *cert. denied,* —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991); *United States v. Bruno,* 897 F.2d 691, 695–96 (3d Cir.1990); *United States v. Rexach,* 896 F.2d 710, 712–13 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Ayarza,* 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990). We note, as an aside, that the Supreme Court has recently granted certiorari in a case presenting the issues of whether a sentencing court may (1) depart under section 5K1.1 absent a government motion, and/or (2) inquire to determine whether the government, by withholding such a motion, acted in an arbitrary and capricious manner. *See United States v. Wade,* 936 F.2d 169 (4th Cir.), *cert. granted,* —— U.S. ——, 112 S.Ct. 635, 116 L.Ed.2d 653 (1991).

**7.** Indeed, there was evidence that, during an interrogation occurring one day after her arrest, appellant changed her story so as to exonerate Davis and portray Jimenez as the ringleader.

paro's assistance as insubstantial. The district court found, specifically and supportably, that the government's refusal to move for a downward departure on this basis was "not unreasonable.... not capricious and ... not arbitrary."

In fine, even if arbitrariness on the government's part confers some leeway on the sentencing court under U.S.S.G. § 5K1.1—and we continue to believe that it does not—appellant would not be benefitted. This is simply not the "egregious case ... where the prosecution stubbornly refuses to file a motion [for a downward departure] despite overwhelming evidence that the accused's assistance has been [very] substantial...." *La Guardia*, 902 F.2d at 1017; *see also United States v. Bannister*, 924 F.2d 21, 23 (1st Cir.1991).[8]

*Affirmed.*

## NEWHARBOR PARTNERS, INC., Plaintiff, Appellant,

### v.

## F.D. RICH CO., INCORPORATED and F.D. Rich Company of Boston, Inc., Defendants, Appellees.

## NEWHARBOR PARTNERS, INC., Plaintiff, Appellee,

### v.

## F.D. RICH CO., INCORPORATED and F.D. Rich Company of Boston, Inc., Defendants, Appellants.

### Nos. 91–1360, 91–1422.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1991.

Decided April 8, 1992.

---

**8.** Appellant's due process claim does not require separate analysis. We, like other courts, have previously held that the procedure envisioned by U.S.S.G. § 5K1.1 is not constitutionally in-

firm. *See Bannister*, 924 F.2d at 22; *La Guardia*, 902 F.2d at 1017; *see also Santos*, 932 F.2d at 255–56; *United States v. Francois*, 889 F.2d 1341, 1344–45 (4th Cir.1989), *cert. denied*, 494

R. Daniel Prentiss with whom R. Daniel Prentiss and Associates, Providence, R.I., was on brief, for Newharbor Partners, Inc.

George E. Lieberman with whom Jerry H. Elmer and Licht & Semonoff, Providence, R.I., were on brief, for F.D. Rich Co., Inc. and F.D. Rich Co. of Boston, Inc.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

---

U.S. 1085, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990).

* Of the Fifth Circuit, sitting by designation.