**UNITED STATES of America, Appellee,**

v.

**Julio ROBLES–TORRES, a/k/a Romero— 55, Defendant, Appellant.**

**No. 96–1677.**

United States Court of Appeals, First Circuit.

Heard March 3, 1997.

Decided March 28, 1997.

Joseph C. Laws, Jr., San Juan, PR, for appellant.

Corbin A. Weiss, with whom John C. Keeney, Acting Assistant Attorney General, Washington, DC, Theresa M.B. Van Vliet, Chief, Narcotic and Dangerous Drug Section, U.S. Department of Justice, Fort Lauderdale, FL, and Guillermo Gil, United States Attorney, Hato Rey, PR, were on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant Julio Robles–Torres (Robles) invites us to set aside his sentence and order a new round of proceedings. Descrying no cognizable error, we decline the invitation.

## I

Robles was among fifty-two defendants indicted as a part of a gigantic drugs-and-money operation. The government charged him, *inter alia,* with conspiring to distribute cocaine and conspiring to launder funds. *See* 21 U.S.C. §§ 841(b)(1)(A), 846 (1994); 18 U.S.C. § 1956(h) (1994).

Robles, who claims to have suffered from schizophrenia since adolescence, requested a competency determination. *See* 18 U.S.C. § 4241 (1994). He was examined by a psychiatrist, Dr. José R. Fumero–Vidal, who informed the district court in February 1995 that the appellant was not competent to stand trial. The district court provisionally accepted Dr. Fumero–Vidal's opinion and remitted the appellant to the federal correctional center and hospital at Butner, North Carolina, with directions to conduct a further examination.

Initially, prison officials concurred with Dr. Fumero–Vidal's assessment (albeit concluding that, at the time of the crimes, Robles "was able to appreciate the nature and quality ... of his acts"). On November 6, 1995, however, prison officials issued a new evaluation in which they declared that Robles "is now competent to stand trial." The new report also advised that, given Robles' "inconsistent clinical presentation throughout the course of his hospitalization," the examin-

ers had concluded that he was "malingering," that is, that he had engaged in "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives." The report went on to state that the appellant's malingering comprised his "method of attempting to elude criminal responsibility."

On December 18, 1995, the district court found Robles competent to stand trial. Shortly thereafter, Robles pleaded guilty to both conspiracy charges. On May 14, 1996, the district court sentenced him to a 135-month prison term (the low end of the applicable guideline range). This appeal followed.

## II

The appellant assigns error in two respects. First, he alleges that the district court erred in refusing to permit him to present the testimony of a psychiatrist, Dr. Gerardo Sanz–Ortega, at the disposition hearing. Second, he avers that the court erroneously refused to depart below the guideline sentencing range (GSR) in imposing sentence.[1] We treat these asseverations separately.

### A.

█ Under the federal sentencing guidelines, "when any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S.S.G. § 6A1.3. This provision does not mean that every factual dispute pertinent to the imposition of sentence demands a full-dress evidentiary hearing—after all, many disputes can adequately be heard and determined on a paper record, see, e.g., United States v. Lilly, 983 F.2d 300, 310–11 (1st Cir.1992); United States v. Shattuck, 961 F.2d 1012, 1015 (1st Cir.1992); Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir.1988)—but it does mean that an evidentiary hearing sometimes may be required at sentencing. See U.S.S.G. § 6A1.3, comment. Still, neither the Confrontation Clause nor the rules of evidence

apply during the sentencing phase of a criminal proceeding, see United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir.1992), and evidentiary hearings at sentencing are—and should remain—the exception rather than the rule. In the last analysis, the decision to hold an evidentiary hearing at the time of sentencing or, alternatively, to eschew such a hearing, lies within the sound discretion of the sentencing court. See Lilly, 983 F.2d at 310–11; Tardiff, 969 F.2d at 1286; United States v. Garcia, 954 F.2d 12, 19 (1st Cir. 1992).

█ We see nothing remotely resembling an abuse of discretion in this instance. We base this determination on three interrelated sets of circumstances: the availability of other information, the essentially cumulative nature of the proposed testimony, and the appellant's failure to explore alternative methods of presentation.

In the first place, the appellant did not seek to contradict the factual predicate laid in the Presentence Investigation Report (PSI Report), and that document described his psychiatric history and treatment in some detail. The court also had the benefit of careful analyses of the appellant's mental condition from the forensic psychiatrists at Butner, along with an opinion letter from Dr. Fumero–Vidal. What is more, the judge had presided over the trial of two of the appellant's codefendants, in the course of which numerous tape-recorded telephone conversations between the appellant and his cohorts were aired. These conversations supplied the court with direct, contemporaneous evidence of the appellant's mental condition and degree of impairment during the time frame when the offenses were being committed.

█ In the second place, Dr. Sanz–Ortega's testimony apparently would have been cumulative. We reach this conclusion based largely on the offer of proof that the appellant's counsel tendered to the trial judge. In it, he stressed that, if allowed to testify, Dr. Sanz–Ortega would describe the nature and etiology of the disease and its general attrib-

---

1. All references herein to the sentencing guidelines are to the November 1995 edition, in effect on the date of sentencing. See United States v.

Harotunian, 920 F.2d 1040, 1041–42 & n. 2 (1st Cir.1990).

utes. Although Dr. Sanz–Ortega had been the appellant's attending psychiatrist since 1979, the attorney did not claim that he (the doctor) had any specific knowledge of the appellant's mental condition at the time the conspiracies were ongoing, and there is nothing in the record that leads us to believe that his general testimony about Robles' psychiatric history and the nature of the illness would have added perceptibly to the historical data and the comments of the other psychiatrists. As matters stood, the record was replete with evidence that Robles had suffered from schizophrenia for a long time but that its severity (and, consequently, his symptomatology) fluctuated, with the result that the condition sometimes affected his behavior and sometimes did not. Nothing in the offer of proof either contradicted this evidence or added a significant new dimension to it. We think it is settled beyond cavil that a sentencing court need not convene an evidentiary hearing merely to consider essentially cumulative evidence. *See United States v. Regan,* 989 F.2d 44, 46–47 (1st Cir.1993).

■ The final flaw in the appellant's argument relates to the mode of presentation: the record reveals no cogent reason why the proposed testimony of Dr. Sanz–Ortega could not have been reduced to writing and proffered in the form of a report. Sentencing hearings are not meant to be mini-trials, *see United States v. Ottens,* 74 F.3d 357, 360 (1st Cir.1996), and a defendant cannot dictate the form of the evidence that he wishes the court to ponder. To the contrary, a party has an obligation, where circumstances reasonably permit, to attempt to present desired evidence in a format convenient for ready consideration by the sentencing court.

■ To be sure the court may elect to allow live testimony; and, moreover, the court may be required to allow live testimony in a few instances (say, when an issue takes a defendant by surprise or when the gist of the proffered evidence cannot be captured in writing). In this instance, however, the court chose not to hear the doctor's testimony, and we do not think it was required to do so. · A sentencing court has broad discretion in determining whether live testimony is, or is not, essential, *see, e.g., United States v. Claudio,* 44 F.3d 10, 16 (1st Cir.1995), and nothing in the instant record indicates a need for live testimony. The disposition hearing did not spring unexpectedly out of some dark abyss, but, rather, was scheduled well in advance, and the offer of proof did not suggest any particular reason why Dr. Sanz–Ortega's input, like that of the other psychiatrists who had examined Robles, could not have been conveyed satisfactorily in a written report. The appellant's failure to explore this avenue weighs against his assignment of error.

We have said enough on this score. Considering all the circumstances, we detect no misuse of discretion in the sentencing court's denial of the appellant's request for an evidentiary hearing. *See, e.g., Regan,* 989 F.2d at 45–47 (upholding as within the district court's discretion a refusal at sentencing to allow live testimony by physicians on the issue of the defendant's mental capacity).

**B.**

■ The appellant does not challenge the lower court's construction of the GSR (offense level 33; criminal history category I; imprisonment range 135–168 months).[2] Nevertheless, he asserts that the sentencing court blundered in denying him a downward departure on the ground of diminished men-

2. In its appellate brief, the government calls a possible bevue to our attention. During the disposition hearing, the district court noted conclusorily that U.S.S.G. § 5C1.2 did not apply. This section permits a court to sentence a defendant below certain mandatory statutory minima when the defendant satisfies specified criteria set forth in U.S.S.G. § 5C1.2(1)—(5). In cases in which the offense level exceeds 25, U.S.S.G. § 2D1.1(b)(4) mandates a two-level reduction if a defendant meets these criteria. Robles did not receive the two-level reduction—in fairness, nei-

ther the appellant nor the government requested the district court to consider the applicability of § 2D1.1(b)(4), and the PSI Report is silent in that respect—and the prosecutor now suggests that this likely was an oversight because he "has reason to believe that appellant may be eligible for such a reduction." Government Br. at 8 n. 2. Under the circumstances, we direct the district court, on remand, to reconsider the computation of the GSR in light of the government's concession, and to reduce Robles' sentence if the court determines it is appropriate to do so.

tal capacity.[3] We lack jurisdiction over this claim.

■ We need not tarry. "It is by now axiomatic that a criminal defendant cannot ground an appeal on a sentencing court's discretionary decision not to depart below the guideline sentencing range." *United States v. Pierro*, 32 F.3d 611, 619 (1st Cir. 1994), *cert. denied*, — U.S. —, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995). An exception to this blackletter rule recognizes that appellate jurisdiction may exist "if it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to deviate from the guideline range or, relatedly, from the court's misapprehension of the rules governing departures." *United States v. Gifford*, 17 F.3d 462, 473 (1st Cir.1994). We pointed out in *Pierro* that it is easy to "confuse the exception and the rule." 32 F.3d at 619. We made it plain, however, that when the decision not to depart rests primarily on differential factfinding, the exception does not apply. *See id.*

■ This case fits comfortably within the confines of the general rule. Although the appellant argues vociferously that, in denying his motion for a downward departure under U.S.S.G. § 5K2.13, the district court mistakenly equated the concept of competency to stand trial with the much different concept of reduced mental capacity at the time of the offense (and, thus, misapprehended the law governing departures under U.S.S.G. § 5K2.13), the record of the disposition hearing belies this claim. The transcript reveals with crystalline clarity that the court, in reaching its decision, understood that it had the discretion to depart downward if it found that Robles suffered from significantly reduced mental capacity at the time he committed the crimes of conviction. But the court, after studying the evidence and hearing oral argument, made a specific finding that § 5K2.13 did not apply because Robles "did not commit the acts charged in the indictment while suffering from a significantly reduced mental capacity." The court went on to find, as a matter of fact, that the crimes occurred while Robles was in a "very lucid" phase, and that his criminal behavior "was the conduct of a person who was not doing those acts because of a diminished capacity resulting from a mental condition."

■ This is an exercise in differential factfinding—no more, no less. The ensuing decision not to depart was based squarely on this factfinding, unaccompanied by any detectable error of law. Hence, the departure decision is not reviewable on appeal.[4] *See Pierro*, 32 F.3d at 619; *Tardiff*, 969 F.2d at 1290; *United States v. Amparo*, 961 F.2d 288, 292 (1st Cir.1992); *United States v. Hilton*, 946 F.2d 955, 957 (1st Cir.1991). We need go no further.

*That portion of the defendant's appeal which purports to challenge the district court's refusal to depart downward is dismissed for want of appellate jurisdiction. The judgment below is affirmed. The case is remitted to the district court for further proceedings in respect to footnote 2 of this opinion.*

---

3. The appellant's claim is premised on U.S.S.G. § 5K2.13, which provides:

   If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

4. Although we do not reach the merits of the decision not to depart, we note that the lower court's factfinding seems fully supportable. The psychiatrists all agreed on the sporadic nature of Robles' symptoms, and the tape recordings adequately evinced Robles' grasp of ongoing events at the critical times. Keeping in mind that a defendant who seeks the unguent of § 5K2.13 must carry the devoir of persuasion as to the appropriateness of a downward departure based on significantly reduced mental capacity, it is surpassingly difficult to second-guess Judge Laffitte's assessment. *See, e.g., United States v. Nuñez–Rodriguez*, 92 F.3d 14, 24–25 (1st Cir.1996) (affirming district court's refusal to depart downward based on diminished capacity despite a previous diagnosis of schizophrenia; district court found that, at the time of the crime, defendant's behavior demonstrated a cognizance "inconsistent with diminished capacity").