Jose Miguel RODRIGUEZ
RODRIGUEZ,
Petitioner,

v.

UNITED STATES of America,
Respondent.

No. CIV. 99–2115(HL).
No. CRIM. 94–274(HL).

United States District Court,
D. Puerto Rico.

Dec. 11, 2000.

Maria H. Sandoval, Santurce, PR, for plaintiff.

Guillermo A. Gil-Bonar, U.S. Attorney's Office District of P.R., Criminal Div., Hato Rey, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a petition for post-conviction relief under 28 U.S.C. § 2255 filed by Jose Miguel Rodriguez Rodriguez ("Rodriguez") with the assistance of re-tained counsel. After a jury trial, Rodri-guez was convicted of carjacking under 18 U.S.C. § 2119(1) and of using and carrying a firearm during and in relation to a crime of violence, namely carjacking, under 18 U.S.C. § 924(c)(1). He was sentenced to life imprisonment for the carjacking count and 60 months imprisonment for the fire-arm count. Judgment was entered on February 7, 1996. Rodriguez appealed, and on August 21, 1998, the First Circuit affirmed his conviction. *See United States v. Rivera–Figueroa*, 149 F.3d 1 (1st Cir. 1998). On October 5, 1998, the United States Supreme Court denied Rodriguez' petition for *certiorari*. *See Rodriguez–Rodriguez v. United States*, 525 U.S. 910, 119 S.Ct. 251, 142 L.Ed.2d 206 (1998).

Reyes then filed this, his first § 2255 petition. The first of Rodriguez' claims is that the district court imposed an illegal sentence of life imprisonment in contraven-tion of the Supreme Court's decision in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

Second, Rodriguez asserts that the dis-trict court refused to consider any grounds for a downward departure under the Sen-tencing Guidelines, including Rodriguez' age, family responsibilities, prior record, and role in the offense.

Rodriguez' third argument for relief is that he was denied his Sixth Amendment right to effective assistance of counsel. Rodriguez attacks several of his attorney's actions. First, Rodriguez claims that his trial attorney objected too late to the ex-clusion of an allegedly exculpatory state-ment and that his attorney failed to file a timely motion for severance of the other defendants, so that the statement could be admitted as to Rodriguez. Third, Rodri-guez argues that his lawyer failed to object to the presentence report's assertion that life imprisonment, rather than 180 months' imprisonment, was the appropriate sen-tence. Fourth, Rodriguez' attorney "failed to seek explicitly a downward departure from the assumed guideline sentencing range of life imprisonment, rather than to argue vaguely for a lesser sentence than life imprisonment, as he did." Dkt. No. 1.

Rodriguez' fourth and final ground for relief is that the district court denied him his Sixth Amendment right to be confront-ed with the witnesses against him when it refused to allow Rodriguez' attorney to cross-examine certain witnesses regarding the previously excluded statement. For the reasons discussed below, the Court must deny Rodriguez' petition.

## DISCUSSION

### 1. Claim of Illegal Sentence of Life Imprisonment

The instant petition for relief is Rodriguez' first under § 2255. Rodriguez bases his claim that the district court im-posed on him an illegal sentence of life imprisonment on the Supreme Court's de-cision in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). The *Jones* decision was handed down on March 24, 1999, nearly six months after the Supreme Court denied Rodri-guez' petition for *certiorari* on direct ap-peal. Thus, the threshold question for the persistence of Rodriguez' first claim is whether the rule announced in *Jones* is applicable to Rodriguez' case by virtue of

its retroactivity to cases on collateral review.

On July 25, 2000, the United States Court of Appeals for the First Circuit decided that the rule announced by the Supreme Court in *Jones* is not retroactive to cases on collateral review. *See Sustache–Rivera v. United States,* 221 F.3d 8, 15 (1st Cir.2000) (holding that "it is clear that the Supreme Court has not made the [*Jones* ] rule retroactive to cases on collateral review"). Because *Jones* does not apply to Rodriguez' case, any claim by Rodriguez based on the *Jones* decision fails. Thus, Rodriguez' first claim for relief under § 2255 is hereby denied.

### 2. Claim of Failure to Consider Grounds for Downward Departure

█ Rodriguez next asserts that the district court refused to consider any grounds for a downward departure under the Sentencing Guidelines, including Rodriguez' age, family responsibilities, prior record, and role in the offense. An unwavering line of First Circuit cases holds that a district court's refusal to grant a defendant a downward departure under the Sentencing Guidelines can not ground an appeal or collateral attack. *See, e.g., United States v. Cruz,* 213 F.3d 1, 5 (1st Cir. 2000) (noting that "refusal to depart on [the listed] grounds would not be reviewable in any event"); *United States v. Robles–Torres,* 109 F.3d 83, 87 (1st Cir.1997) (holding that an appeal can not successfully be based on a court's failure to grant a downward departure); *United States v. Pierro,* 32 F.3d 611, 619 (1st Cir.1994) (stating that "[i]t is by now axiomatic that a criminal defendant cannot ground an appeal on a sentencing court's discretionary decision not to depart below the guideline sentencing range"), *cert. denied,* 513 U.S. 1119, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995); *United States v. Tardiff,* 969 F.2d 1283, 1290 (1st Cir.1992) (holding that "[a] district court's refusal to depart from a correctly calibrated sentencing range, regardless of the suggested direction, is sim-

ply not an appealable event"); *United States v. Amparo,* 961 F.2d 288, 292 (1st Cir.1992) (pointing out that "[i]t is an immutable verity that 'absent extraordinary circumstances, a criminal defendant cannot ground an appeal on the district court's discretionary decision not to undertake a downward departure from the sentencing range indicated by the guidelines' " (quoting *United States v. Ruiz,* 905 F.2d 499, 508–09 (1st Cir.1990))), *cert. denied,* 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

█ Rodriguez' claim would be saved "if the record support[ed] an inference that the sentencing court's failure to depart did not represent an exercise of fact-finding or discretion, but was instead the product of the court's miscalculation about whether it possessed the authority to depart." *Amparo,* 961 F.2d at 292. Rodriguez' case is identical to that of the defendant in *Amparo,* though, in that Rodriguez "does not theorize that the sentencing judge was unaware of his power to depart or misconceived the legal standard." *Id.* Thus, Rodriguez' claim based on the district court's failure to grant him a downward departure is hereby denied.

### 3. Claim of Denial of Effective Assistance of Counsel

#### a. Claim that Trial Counsel Objected Too Late to Exclusion of Allegedly Exculpatory Statement and Failed to Make Timely Motion for Severance

The first of Rodriguez' claims of ineffective assistance of counsel stems from his assertion that his trial attorney failed to make a timely objection to the exclusion from evidence of a dying declaration. Before trial, Rodriguez' codefendants moved to suppress the dying declaration. The trial judge granted the motion in the absence of any objection by Rodriguez' trial counsel. Rodriguez now argues that the declaration, while inculpatory as to his codefendants, was exculpatory as to him. Rodriguez' attorney objected to suppres-

sion of the statement six months after the suppression hearing. This objection came in the form of a motion for severance, so that the declaration could be admitted solely as to Rodriguez. The severance motion having been made on the eve of trial, however, the trial judge denied it.

 The Sixth Amendment guarantees a criminal defendant effective assistance of counsel in order to protect that defendant's fundamental right to a fair trial. *Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Constitution does not guarantee a defendant a perfect or successful defense; rather, he is guaranteed " 'reasonably effective assistance under the circumstances then obtaining.' " *Lema v. United States,* 987 F.2d 48, 51 (1st Cir. 1993) (quoting *United States v. Natanel,* 938 F.2d 302, 309–10 (1st Cir.1991)). A court should evaluate the challenged conduct not with the benefit of hindsight, but from the attorney's perspective at the time of the trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Lema,* 987 F.2d at 51.

 A petitioner must show, first, that his counsel's performance was deficient and, second, that this deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Phoenix v. Matesanz,* 233 F.3d 77, 80 (1st Cir.2000); *Bucuvalas v. United States,* 98 F.3d 652, 658 (1st Cir.1996); *Bonneau v. United States,* 961 F.2d 17, 20 (1st Cir. 1992). The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one. *Bucuvalas,* 98 F.3d at 658. An attorney's performance is deficient if it is " 'so inferior as to be objectively unreasonable.' " *Id.* (quoting *United States v. McGill,* 11 F.3d 223, 226 (1st Cir.1993)). There is a strong presumption that counsel's performance comes within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The defendant must overcome the presumption that his counsel's performance could " 'be considered sound trial strategy.' " *Id.* (quot-

ing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). The court's scrutiny of the attorney's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

For a defendant "[t]o establish prejudice, he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Phoenix,* 233 F.3d at 80 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

 Rodriguez argues that the First Circuit's opinion disposing of his direct appeal confirms that his trial attorney rendered him ineffective assistance. The First Circuit expressed its view of Rodriguez' trial counsel's performance by saying,

> [t]he difficulty is that there was no objection from [Rodriguez] when the other defendants pursued their motion to suppress in the district court. Had the objection been timely made, the court would have been confronted with a different set of arguments for admissibility .... This was the occasion for [Rodriguez] to object to the suppression motion, and yet no such objection was made until six months later, when [Rodriguez] first moved for a severance ...."

*Rivera–Figueroa,* 149 F.3d at 5. This motion for severance came "on the eve of trial," a time at which counsel for Rodriguez "could hardly expect the trial judge to look sympathetically" at such a motion. *Id.* n. 4. The Court of Appeals went on to note that "[c]ounsel for [Rodriguez] says in his brief that he did not 'participate' in the suppression hearing, but the transcript shows that counsel for [Rodriguez] was present at the hearing and raised no objection to the suppression motion." *Id.* n. 3.

The Court agrees with Rodriguez that his trial counsel was ineffective. The First Circuit's statements virtually foreclose any conclusion other than that Rodriguez' trial

counsel's performance was so inferior as to be objectively unreasonable.

■ Having concluded that Rodriguez' trial attorney was ineffective, the Court must determine whether Rodriguez can meet his heavy burden of showing that his counsel's deficient performance prejudiced his defense. Rodriguez, who is represented by retained counsel in this collateral proceeding, limits his efforts to meet his burden of showing prejudice to stating that the excluded statement was "exculpatory as to Mr. Rodriguez." This bare conclusion is of little help to the Court, but even proceeding without Rodriguez' assistance, the Court is compelled to conclude that Rodriguez can not show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

The First Circuit's discussion of possible prejudice resulting from the trial court's suppression of the dying declaration in Rodriguez' trial is enlightening. During its consideration of Rodriguez' direct appeal in *Rivera–Figueroa*, the First Circuit subjected to plain-error review the trial court's decision to exclude the dying declaration. *See* Fed.R.Crim.P. 52(b); Fed. R.Evid. 103(d); *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The First Circuit required for a finding of plain error that the party who failed to object to exclusion of the statement show "not only that the exclusion of evidence was error ... but that there is a substantial likelihood that the admission of the evidence would have led to a different result." *Rivera–Figueroa*, 149 F.3d at 5. The First Circuit derived this "substantial likelihood" prejudice formulation directly from the prejudice standard set forth by the Supreme Court in *Olano*, in which the Supreme Court declared that for an error

to be prejudicial, "[i]t must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *See also United States v. Perez–Montanez*, 202 F.3d 434, 442 (1st Cir.2000) (quoting *Olano*, 507 U.S. at 734, 113 S.Ct. 1770), cert. denied, —— U.S. ——, 121 S.Ct. 204, 148 L.Ed.2d 143 (2000); *United States v. Colon–Munoz*, 192 F.3d 210, 222 (1st Cir. 1999) (same), *cert. denied*, 529 U.S. 1055, 120 S.Ct. 1559, 146 L.Ed.2d 463 (2000).[1]

The First Circuit assumed for the sake of argument that the trial court had committed error when it suppressed the statement and considered the issue of prejudice resulting from the erroneous suppression. The First Circuit determined that the allegedly exculpatory dying declaration

> did not say that the person [the declarant] 'named' were the only ones involved; on the contrary, he said that there was a fourth person whom he could not identify. Without a showing that [the declarant] knew [Rodriguez] well enough to name him, the dying declaration had limited tendency to exculpate [Rodriguez]; and in view of the testimony against him by co-defendants, we cannot find it likely that admitting the dying declaration would have led to an acquittal.

*Rivera–Figueroa*, 149 F.3d at 5. Thus, the First Circuit found that the trial court's exclusion of the dying declaration was not prejudicial to Rodriguez' defense. In other words, the court was unable to conclude that admission of the statement into evidence was substantially likely to have led to a different outcome.

The question for this Court is whether but for Rodriguez' attorney's failure to make a timely objection to exclusion of the dying declaration and failure to make a

---

1. In light of the First Circuit's return to the *Olano* standard that a plain error *"must* have affected the outcome of the district court proceedings,"* in the later cases of *Perez–Montanez* and *Colon–Munoz*, the Court notes that the First Circuit's use of the "substantial likelihood" standard in *Rivera–Figueroa* is something of an outlier. For purposes of this

Opinion and Order, however, the validity of using the substantial-likelihood standard in plain-error review is irrelevant. The Court here limits its inquiry to the compatibility of the plain-error substantial-likelihood prejudice standard in *Rivera–Figueroa* with the "reasonable probability" prejudice standard in *Strickland.*

timely motion for severance, there is a reasonable probability that the result of the proceeding would have been different. Before embarking on answering this question, though, the Court must decide if the First Circuit's plain-error substantial-likelihood finding is of use in the Court's reasonable-probability inquiry. The Court determines that it is.[2]

The First Circuit's discussion of the value to Rodriguez' case of the contents of the dying declaration makes clear that the court engaged in virtually the same reasoning required by the *Strickland* prejudice standard. In other words, even if the statement had been admitted into evidence, whether because of a timely objection to exclusion or because of a timely motion for severance, there is not a reasonable probability that the outcome of Rodriguez' trial would have been different. The declarant's assertion that a fourth, unidentified person was present, the absence of evidence that the declarant knew Rodriguez well enough to name him, and the direct testimony against Rodriguez all combine to snuff out any reasonable probability of a different outcome in Rodriguez' trial. Accordingly, this claim is hereby denied.

*b. Claim that Trial Counsel Failed to Object to Presentence Report's Assertion that Life Imprisonment, Rather than 180 Months' Imprisonment, was the Appropriate Sentence for the Carjacking Count .*

■ Rodriguez also claims ineffective assistance of counsel based on his trial attorney's failure to object to the presentence report's contention that life imprisonment was the applicable sentence for Rodriguez' carjacking conviction. Because Rodriguez is unable to show that counsel's performance was deficient in this regard, this claim must be denied.

Rodriguez asserts that for him to have been sentenced to life imprisonment, the jury had to have found beyond a reasonable doubt that the carjacking resulted in death. The jury made no such finding. Sentencing without such a finding by the jury, however, was not proscribed until the Supreme Court's decision in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). *Jones* was handed down on March 24, 1999. Rodriguez' sentencing, and thus his attorney's opportunity to object to the presentence report, took place on February 7, 1996. Clearly, Rodriguez' attorney could not have been expected to anticipate a change in the Supreme Court's jurisprudence over three years in advance. Accordingly, this claim is hereby denied.

*c. Claim that Trial Counsel Failed to Seek Explicitly a Downward Departure from Life Imprisonment*

In pressing this claim, Rodriguez cryptically asserts that "[c]ounsel failed to seek explicitly a downward departure from the assumed guideline sentencing range of life imprisonment, rather than to argue vaguely for a lesser sentence than life imprisonment, as he did." First, the Court is

---

**2.** The Court reiterates that the analysis in the instant case only requires a comparison of the plain-error prejudice standard employed by the First Circuit in *Rivera–Figueroa* with the *Strickland* prejudice standard. Still, in *United States v. Saro*, 24 F.3d 283 (D.C.Cir.1994), the District of Columbia Circuit explicitly compared the prejudice standard set forth in *Strickland* with the prejudice standard applicable in a review for plain error. The D.C. Circuit opined that

[s]ince reversal for 'plain error' is designed largely to protect defendants from the defaults of counsel, there is a natural analogy

between the assertion of 'plain error' and the assertion of ineffective assistance of counsel .... It should come as no surprise, then, that the *Strickland* formulation of 'prejudice' comes quite close to what we have required in plain-error cases. For these we have ... required defendants to show that a correct ruling 'might likely have substantially affected the outcome of the trial.'

*Saro*, 24 F.3d at 287 (quoting *United States v. Blackwell*, 694 F.2d 1325, 1342 (D.C.Cir. 1982)).

unconvinced that Rodriguez has even stated a claim by attempting to differentiate between "explicitly" seeking a downward departure and "vaguely" arguing for a lesser sentence. Second, this claim is inconsistent with Rodriguez' earlier claim that the trial court erred by failing to consider various specific grounds for a downward departure. Without more, the Court is compelled to deny this claim.

### 4. Claim of Denial of Right of Confrontation

Finally, Rodriguez argues that he was denied his Sixth Amendment right to be confronted with the witnesses against him when the trial court, in accordance with its ruling excluding the dying declaration, refused to allow his attorney to cross examine police officers Mayra Velez and Carlos Burgos regarding the excluded dying declaration.

 Indeed, "[t]he Confrontation Clause of the Sixth Amendment ensures a criminal defendant the right to cross-examine witnesses." *United States v. Anderson*, 139 F.3d 291, 302 (1st Cir.1998) (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)), *cert. denied*, 525 U.S. 866, 119 S.Ct. 158, 142 L.Ed.2d 129 (1998). On the other hand, the Confrontation Clause only mandates that a criminal defendant be confronted with the witnesses *against* him. *United States v. Houlihan*, 92 F.3d 1271, 1296 (1st Cir.1996), *cert. denied*, 519 U.S. 1118, 117 S.Ct. 963, 136 L.Ed.2d 849 (1997).[3] The police officers whom Rodriguez was unable to cross-examine were simply not witnesses against Rodriguez.

Rodriguez makes no claim that he was unable to cross-examine the police officers regarding their testimony against him. Instead, he argues that he was improperly prevented from cross-examining the officers regarding matters to which they had not even testified. The officers simply can not be considered witnesses "against" Rodriguez with regard to matters outside the scope of their testimony. Thus, Rodriguez' claim under the Confrontation Clause is hereby denied.

WHEREFORE, for all of the reasons set forth above, the Court denies Rodriguez' § 2255 petition. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

3. In *Houlihan*, the trial judge gave the jury a limiting instruction that certain witnesses' testimony was not admissible against defendants Houlihan and Nardone, but rather only against the other defendants. The court then prevented Houlihan and Nardone from cross-examining those witnesses. Houlihan and Nardone appealed on the ground that their confrontation rights had been abridged. The First Circuit then pointed out that because of the limiting instruction, the witnesses were simply not witnesses *against* Houlihan and Nardone. There was no constitutional violation. In the instant case, Rodriguez asseverates that he should have been able to cross-examine the police officers regarding testimony that did not even take place. Rodriguez' claim is even further afield of the zone protected by the Sixth Amendment's confrontation right than was the claim involved in *Houlihan*.