USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1298 UNITED STATES, Appellee, v. JULIO RAMIREZ-BURGOS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ ____________________ Before Cyr, Stahl and Lynch, Circuit Judges. ______________ ____________________ Julio Ramirez-Burgos on brief pro se. ____________________ Guillermo Gil, United States Attorney, Nelson Perez-Sosa, ______________ ___________________ Assistant United States Attorney, and Jose A. Quilles-Espinosa, Senior ________________________ Litigation Counsel, on brief for appellee. ____________________ MAY 21, 1997 ____________________ Per Curiam. Defendant Julio Ramirez-Burgos was ___________ convicted by a jury of aiding and abetting in two armed carjackings in violation of 18 U.S.C. 2119, and 18 U.S.C.  2, and of using a weapon during the commission of a violent crime in violation of 18 U.S.C. 924(c). He was sentenced to a term of 35 years' imprisonment.  On appeal, defendant seeks to overturn his conviction on the grounds that (1) the prosecution allegedly presented perjured testimony, to wit, the testimony of defendant's accomplice, (2) the court erred in failing to suppress the two victims' identifications of defendant, (3) the evidence was otherwise insufficient to prove that defendant participated in the crimes, and (4) the court erred in admitting evidence of a rape he committed during one of the carjackings. He also asserts multiple challenges to the computation of his sentence. Background  Background __________ Viewed in the light most favorable to the verdict, the evidence at trial showed that by prearrangement, defendant and his accomplice, Daniel Montanez-Rosa ("Daniel"), were each carrying a revolver when they accosted their first carjacking victim, Nancy Rosada-Santiago ("Nancy"). Brandishing a weapon, one of the men forced Nancy to cede control of her Pontiac Sunbird. -2- The pair then drove around in Nancy's car searching for a second victim -- all the while holding Nancy against her will, guns pressed against her. She was forced to lie low in the front passenger seat, facing the door, while the men questioned her about her family and personal life, stole her cash, jewelry and telephone beeper, and threatened her children and her life. Spying a second likely victim, Kassandra Rivera- Boujoven ("Kassandra"), the men rammed Nancy's car into Kassandra's Mitsubishi. Again brandishing a gun, Daniel took over the Mitsubishi, forcing Kassandra to lie down on the passenger seat of her car, face toward the door.  Now in control of two cars and two women victims, the carjackers continued on their journey toward a site where they could sell the stolen jewelry and buy drugs. Along the way, defendant stopped Nancy's car, forced her to undress, and forcibly raped her. During the rape the car's interior light was on, allowing Nancy to see the defendant's face. She also could hear Daniel yelling from a distance, urging defendant to "hurry up." With a final instruction to Nancy to remain at the site or her family would "pay" for it, "especially [her] little girl," defendant exited the Pontiac and climbed into the back seat of the Mitsubishi -- leaving Nancy kneeling -3- against the passenger seat of her car, traumatized, hurt, and suffering from vaginal bleeding. Together again and driving about in the Mitsubishi, the two men now turned their attention to Kassandra. Pressing a gun to her ribs, they questioned her about her personal life, rifled through her purse, stole her jewelry, threatened her life, and argued between themselves about how to drug her and kill her.  At one point they stopped the car at a housing project in order to buy drugs, and again at a gas station to get water with which to mix the drugs. As they were injecting themselves with the drugs, a police car approached, lights flashing. In the light, Kassandra clearly saw the defendant's face, and his gun. Threatening to shoot her if she did not turn away, defendant also ordered Daniel to "take off." A high speed chase ensued which ended with a crash.  The two men were arrested at the crash site. Kassandra was discovered in the wreckage wedged beneath the glove compartment. She was pried from the car, semi- conscious, hysterical, and unable to walk.  Defendant testified that he was not involved in either of the carjackings, but had unwittingly climbed into the back seat of Kassandra's Mitsubishi, unarmed, just before the police chase. By "sheer happenstance," he claims, the real carjackers (Daniel and an unidentified second man) must -4- have interrupted their crime spree at the same time and place (the housing project) where defendant had gone to buy drugs. Allegedly without any knowledge of the crimes, nor the existence of the presumed real second carjacker, defendant must have unwittingly switched places with the real second carjacker -- joining Daniel in the Mitsubishi for the sole purpose of shooting-up drugs.  Defendant theorizes that Daniel's testimony was a fabrication designed to inculpate defendant in a rape which Daniel himself had perpetrated -- and that both Kassandra and Nancy were mistaken in their identifications of defendant.  (1) Alleged Perjury (1) Alleged Perjury _______________ Defendant asks this court to infer that Daniel's testimony was perjured -- and that the prosecution knew it -- as shown by inconsistencies between Daniel's testimony and that of the complaining witnesses; Daniel's own prior inconsistent statements, confessed lies in other cases, and prior criminal convictions. A knowing presentation of perjured testimony by the prosecution violates a defendant's right to due process. See United States v. Tavares, 93 F.3d ___ _____________ _______ 10, 14 (1st Cir.) (citations), cert. denied, 117 S. Ct. 373 ____________ (1996).  However, "it is axiomatic that inconsistent testimony is not per se perjurious." United States v. Gary, _____________ ____ 74 F.3d 304, 314 (1st Cir.), cert. denied, 116 S. Ct. 2567 ____________ -5- (1996); see also United States v. Lebon, 4 F.3d 1, 2 (1st _________ _____________ _____ Cir. 1993). Nor is perjury conclusively shown here by adding to the mix the circumstantial evidence that Daniel lied before and engaged in other acts of dishonesty. Defendant did not ask the trial court to make a finding of perjury. "We decline his invitation that we now find wilful intent to provide false testimony based on no more than . . . inconsistenc[ies]" and character evidence. Tavares, 93 F.3d at 14.  _______ (2) Motion to Suppress the Identifications (2) Motion to Suppress the Identifications ______________________________________ Defendant challenges the denial of his motion to suppress the complaining witnesses' line-up identifications of him, and presumably the admissibility of their later in- court identifications, as tainted by a prior show-up and suggestive conditions at the line-up. Identifications made in circumstances that are so impermissibly suggestive as to give rise to "a very substantial likelihood of irreparable misidentification" are not admissible in keeping with due process. Bouthot v. United States, 878 F.2d 1506, 1514 (1st _______ _____________ Cir. 1989) (quoting Simmons v. United States, 390 U.S. 377, _______ _____________ 384 (1968)).  Defendant claims that (1) Kassandra's identification was impermissibly tainted because Kassandra saw the defendant being taken by his keepers through a hallway at the police station to the line-up room; and (2) -6- both of the complaining witnesses' line-up identifications were tainted because defendant was distinctively clothed (allegedly in a tee shirt and blue jeans), and his face was swollen, bruised and bleeding. His version of the line-up was supported by his wife, Sonia Maria Vazquez-Rosa ("Sonia"), who testified that she was in the police station hallway and there saw her husband being led past Kassandra on his way to the line-up, tee shirted and battered.  Other testimony about the line-up, however, was to the contrary. Kassandra denied that the alleged accidental show-up had occurred, as did the police officer who accompanied Kassandra before and during the line-up. They denied seeing any swelling, bleeding or bruising on the defendant's face. His clothing, they said, was substantially the same as that of the other participants, including an identical over-the-trousers collared shirt supplied to all participants by the police. Contemporaneous police photographs corroborated this version of the line-up.  The district judge found, as fact, that the alleged accidental show-up had not occurred; and that defendant's face was not impermissibly marked nor his appearance otherwise suggestive. The findings reflect a "reasonable view of the evidence," and incorporate credibility determinations which are necessarily entitled to special deference by an appellate tribunal. United States v. De ______________ __ -7- Jesus-Rios, 990 F.2d 672, 676 (1st Cir. 1993); see also __________ ________ Bouthot, 878 F.2d at 1513-14 n.8. _______ Seeing no ground for disturbing the court's factual determination that the identification procedure was not impermissibly suggestive, we need not reach the second prong of the due process issue, i.e., the likelihood of misidentification. See United States v. Guzman-Rivera, 990 ___ _____________ _____________ F.2d 681, 682 (1st Cir. 1993). In any event, as discussed below and in the margin, the victims' identifications were reliable in light of the relevant second-prong factors.1  1 (3) Sufficiency of the Evidence (3) Sufficiency of the Evidence ___________________________ Defendant argues that there was insufficient evidence to identify him as a participant in the crimes, at least in the absence of Daniel's (allegedly perjured) testimony. The argument is faulty for two reasons. First, Daniel's testimony, though inconsistent in part with the other eyewitnesses, was not incredible. His credibility was subjected to sustained and searching cross- examination. The jury was instructed on the possibility of  ____________________ 1As applied in this case, the second-prong factors set 1 forth in De Jesus-Rios, 990 F.2d at 677, show: (1) Each of _____________ the complaining witnesses had an opportunity during the crime to view the defendant at close range, (2) both testified that their gazes were fixed on defendant during those moments, (3) their descriptions to the police, while vague and omitting defendant's moustache, were consistent with defendant's appearance, (4) both identified the defendant with certainty, and (5) the line-up was held within 24-36 hours after the crime.  -8- problems with testimony of this type. The choice was for the jury, not for this court. See United States v. Laboy- ___ _____________ ______ Delgado, 84 F.3d 22, 27 (1st Cir. 1996). _______ Second, and in any event, defendant was positively identified in court by both of the complaining witnesses as an armed and violent participant in the carjackings. Despite gaps in each witness's ability to see during the respective crimes, each identification had a substantial foundation and was corroborated by other evidence.  Nancy testified that she first saw the defendant only briefly, as he entered her car. She then saw his face clearly in the car light for several minutes as he raped her. A piece of paper found in Nancy's purse, which was retrieved after the crime from her car, bore the defendant's fingerprint. Nancy's testimony also corroborated the identification of defendant as the back-seat carjacker of Kassandra's vehicle. As defendant drove away in another car, Nancy testified, he reminded her of his threats against her child, and told her to call him on the telephone beeper which he had stolen from her. Substantially the same words were overheard by Kassandra, shouted from her car window by the second of her car's invaders (whom she could not yet see).  Kassandra then heard this second carjacker's voice continuously, enabling her to testify with certainty that it -9- was he who had initially climbed over her crouched body into the back seat of her car, held a gun to her ribs, and then exited and reentered the vehicle at the housing project. During this stop, she said, too, the back-seat carjacker stood right next to the car, his body continuously in her line of sight. True, she first saw defendant's face, and gun, only when the police chase began. But defendant spoke then, too, and she saw the face connected to this voice at close range, in good lighting, and with fixed attention.  To be sure, cross-examination revealed that each of the complaining witnesses was extremely frightened during the crime, and still upset at the time of the line-ups. Their respective opportunities to see the carjackers had been limited by darkness and the twisted postures they had been forced to assume on the passenger seats of their automobiles. In addition, each gave only a general description of the culprits when first questioned, and each testified that the first carjacker to approach her car was partly masked by a tee shirt pulled up over his mouth and nose. Nancy even admitted that she never saw the first carjacker's face, and was not at all able to identify Daniel.  These were good arguments, offered to the jury in an attempt to cast doubt on the credibility of the victims' identifications. In addition, defendant challenged the scientific evidence, pointing out that much of it was -10- inconclusive, and someone else might have wrongly transported his fingerprint to Nancy's car. And he elicited substantial testimony which tended to impeach Daniel's credibility.  Having heard all of the evidence, however, including defendant's own testimony, the jury convicted the defendant. Viewed in the light most favorable to the verdict, there was more than ample reliable identification evidence which "would allow a rational jury to determine beyond a reasonable doubt that the defendant [was] guilty as charged." United States v. Sullivan, 85 F.3d 743, 747 (1st _____________ ________ Cir. 1996) (quoting United States v. Mena-Robles, 4 F.3d ______________ ___________ 1026, 1031 (1st Cir. 1993)), cert. denied, 114 S. Ct. 1550 ____________ (1994); see also Guzman-Rivera, 990 F.2d at 682-83.  ________ _____________ (4) Evidence of the Rape (4) Evidence of the Rape ____________________ Defendant also assigns as error the rejection of his motion to exclude evidence of the rape; arguing that rape is not an "element" of the offense, but only a sentencing enhancement issue. We have travelled this road before, and rejected similar arguments under this statute. See United ___ ______ States v. Cruz-Kuilan, 75 F.3d 59, 60-61 (1st Cir. 1996) ______ ___________ (finding proof of victim's death admissible to show a taking by force and violence); United States v. Rivera-Gomez, 67 ______________ ____________ F.3d 993, 995 (1st Cir. 1995) (finding proof of death admissible to show use of force and violence, although death is not an independent element of offense); United States v. _____________ -11- Rivera, 83 F.3d 542, 545 (1st Cir. 1996) (upholding ______ admissibility of evidence of rape which provided a "crucial chapter" in narrative of events and critical proof of possession of a weapon). Of course, in and of itself, a rape is not an essential element of the crime of carjacking as defined in the Anti Car Theft Act, 18 U.S.C. 2119 (1992).2 See 2 ___ Rivera-Gomez, 67 F.3d at 996 (defining statutory elements). ____________ However, if a carjacker chooses rape as the means of "force," "violence," or "intimidation" by which to seize control of a vehicle, it amounts to the same thing.  In this case the prosecution showed that Nancy's car was first taken from her by intimidation with a gun, not  ____________________ 2 The 1992 statute provides: 2 Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been . . . in interstate or foreign commerce from . . . the person of . . . another by force and violence or by intimidation, or attempts to do so, shall -- (1) be fined . . . or imprisoned not more than 15 years or both (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both . . . .  The statute has since been amended. In 1994, Congress substituted "with intent to cause death or serious bodily harm" for "possessing a firearm as defined in section 921." In October, 1996, Congress clarified subsection (2) by expressly providing that "serious bodily injury" also includes sexual assaults violative of 18 U.S.C. 2241, 2242. -12- by rape. The later rape, nonetheless, accompanied by a veiled threat to do the same to her daughter, terrorized Nancy into complying with the carjackers' command that she -- with her car -- remain stationery for some time at the spot where the carjackers left them. Thus the rape, like the earlier brandishing of the gun, provided the intimidation by which the carjackers extended their control of the victim and her automobile. Compare Rivera, 83 F.3d at 545 (holding _______ ______ evidence of a rape admissible on other issues, but not essential to prove a taking by "force and violence," where the rape was not instrumental in the taking nor retention of ___ the car).  Evidence of the rape was of critical relevance, in any event, to the jury's understanding of Nancy's identification of the defendant. And it provided a "crucial chapter" in the narrative that linked the defendant to the second carjacking. Rivera-Gomez, 67 F.3d at 997. Given the ____________ value of this evidence as directly probative of two elements of the offense, the court did not abuse its discretion under Fed. R. Evid. 403 in admitting it, despite any risk of unfair prejudice. Id. at 996. "Though lurid, it is part of what ___ old-fashioned lawyers might call the res gestae." Id. at ___ 998.  Sentencing Sentencing __________ -13- The court sentenced defendant to 420 months' imprisonment: 360 months (concurrent terms) for the carjackings charged in Counts One and Two, and a mandatory consecutive 60-month term for the firearms violation charged in Count Three. The concurrent carjacking sentences exceed the statutory maximum. Under the guidelines, the carjacking sentences were calculated as follows. The base offense level, under USSG 2B3.1, for each carjacking count was 20. Six sets of enhancements were added to each count, bringing the offense level for Count One to 35, and for Count Two to 33. Since these were "non-groupable offenses," applying USSG 3D1.4(a), the court added two levels, bringing defendant's total offense level for the two carjackings to 37. With a Category I criminal history, this produced a guideline range for the carjackings of 210-262 months. The court then departed upward under USSG 5K2.3, and Application note 2 to USSG 2K2.4, arriving at the 360-month (concurrent) sentence.  However, as the government concedes on appeal, the statutory maximum term for the Count One carjacking (Nancy's car) is 300 months. See 18 U.S.C. 2119(2). On Count Two, ___ (Kassandra's car), the maximum is 180 months. See 18 U.S.C. ___ 2119(1). Concurrent terms for the carjackings were clearly intended by the court, and so specified. Thus the sentence on Counts One and Two should have been capped at the -14- statutory maximum for the highest count of conviction, or 300 months. See USSG 5G1.2(b)(c). Adding the 60-month ___ mandatory consecutive sentence under 18 U.S.C. 924(c)), produces a total allowable term of imprisonment for all three counts of 360 months.  We reject defendant's other assignments of error at sentencing for the following reasons.  (1) Two-level Enhancement for Perjury: There was (1) Two-level Enhancement for Perjury _________________________________ no clear error in the court's finding that defendant intentionally attempted to obstruct justice by falsely denying any involvement in the two carjackings and the rape. See USSG 3C1.1; United States v. Tracy, 36 F.3d 199, 201 ___ _____________ _____ (1st Cir.), cert. denied, 513 U.S. 1031 (1994).  ____________ Defendant theorizes that his testimony may not have been deliberately false but, since he is a drug addict, the product of confusion, mistake, or faulty memory. However, at trial he unequivocally testified to an alibi, claiming to remember even the television programs he was watching in his home at the time of the crimes. He reiterated the alibi in his post-trial statement to the probation officer. Given the several eyewitnesses who instead placed him at the crime scenes, as well as the fingerprint evidence, there was ample factual support for the district court's finding. See United States v. Dunnigan, 507 ___ _____________ ________ U.S. 87, 95 (1993).  -15- (2) Two Level Enhancement for Reckless Endangerment (2) Two Level Enhancement for Reckless Endangerment _______________________________________________ During Flight: There was no clear error in the court's During Flight ______________ finding that the high speed chase, along crowded roads, created a substantial risk of death or bodily injury to others, and actually resulted in bodily injury to Kassandra. See USSG 3C1.2. ___ Defendant argues that as a back-seat occupant, he was not in control of the vehicle. However, there was ample support for the court's finding that defendant ordered Daniel to "take off," and otherwise aided and abetted Daniel throughout the chase. (3) Loss Exceeding $10,000: There is no clear (3) Loss Exceeding $10,000 _______________________ error in the court's findings that the loss to each victim, including the value of their respective automobiles, exceeded $10,000. Defendant's challenges in this regard are frivolous. See USSG 2B1.1, comment. (n.2).  ___ (4) Serious Bodily Injury: The court's (4) Serious Bodily Injury: _________________________ determination that Nancy suffered "serious bodily injury" due to a protracted impairment of her mental faculties triggered the twenty-five year maximum term of imprisonment on Count One. See 18 U.S.C. 2119(2).3 In calculating defendant's 3 ___  ____________________ 3 The statute incorporates the definition of "serious 3 bodily injury," found in 18 U.S.C. 1365(g)(3), i.e., injury involving "(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ or mental faculty . . . ." -16- guideline sentence, the court imposed a four-level enhancement for "serious bodily injury" under USSG 2B3.1(b)(3), and departed upward under USSG 5K2.3. The decision to apply the statutory penalty range provided in 18 U.S.C. 2119(2), was amply supported by evidence adduced at the sentencing hearing. Psychiatric reports showed that as a result of the crime Nancy was diagnosed with post-traumatic stress disorder and major depression. Due to the mental trauma inflicted by the crime, she attempted suicide at least twice, suffered auditory hallucinations, and was hospitalized for psychiatric treatment. She was forced to discontinue her career as a pharmacist, had become emotionally distant from her children, and dependent on her mother. The medical prognosis is that she will require additional psychotherapy, hospitalizations, and medical intervention for the rest of her life. Defendant misplaces reliance on United States v. ______________ Rivera, 83 F.3d 542 (1st Cir. 1996). In Rivera there was no ______ ______ finding of protracted mental injury, and inadequate evidence to sustain a finding that the victim had suffered "extreme physical pain," as defined by the statute. Id. at 547. By ___ contrast here, the court found that as a result of the crime Nancy will suffer a lifetime impairment of her mental  ____________________   -17- faculties. See 18 U.S.C. 1365(g)(3)(D). It should also be ___ noted that subsequent to the Rivera case, Congress enacted ______ the Carjacking Correction Act of 1996, which amended the definition of "serious bodily injury" to include rape and sexual abuse. The court's factual finding was amply supported by evidence in the PSR and medical reports. There was no abuse in the refusal to require live testimony. "Sentencing hearings are not meant to be mini-trials." United States v. _____________ Robles-Torres, 109 F.3d 83, 86 (1st Cir. 1997) (citation _____________ omitted).  As to the guidelines calculation, the court did not exhaust its enhancement power under 2B3.1, by imposing a four level increase for Nancy's "serious bodily injury."4 4 The finding that Nancy will suffer a lifetime of mental illness could have been factored into the sentence as a six- level enhancement for "permanent" bodily injury.5 Instead, 5 factoring in the permanency of the injury as an upward  ____________________ 4"Serious bodily injury" is defined in the sentencing 4 guidelines to mean "extreme physical pain or the impairment of a function of a bodily member, organ or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG 1B1.1 comment. (n.1(j)). 5"Permanent or life-threatening bodily injury" includes 5 "loss or substantial impairment of the function of a . . . mental faculty that is likely to be permanent." USSG 1B1 comment. (n.1(h)). -18- departure under USSG 5K2.3, p.s., did not amount to "double counting."  Defendant also fails to demonstrate that the court abused its discretion in deciding that a lifetime of mental illness is a "much more serious" injury than that "normally resulting from commission of the offense" of carjacking.6 6 USSG 5K2.3, p.s. The court was not required to obtain extrinsic "proof" of a comparatively "normal" level of carjacking victims' injuries, but was entitled to rely on other Guidelines cases and its superior knowledge of the facts. Koon v. United States, 116 S. Ct. 2035, 2038 (1996); ____ _____________ United States v. Rivera, 994 F.2d 942, 952 (1st Cir. 1993). _____________ ______ (5) Upward Departure Under USSG 2K2.4, comment. (5) Upward Departure Under USSG 2K2.4, comment. ______________________________________________ (n.2) (n.2) _____ Defendant argues that the court erred in applying Application note 2 to USSG 2K2.4, which permits an upward departure to compensate for the possible anomalous result of an offender receiving a lighter guidelines sentence for an underlying offense (carjacking) when he is also convicted of a firearms offense under 924(c), than if he was convicted solely of the underlying offense.   ____________________ 6Defendant mistakenly assumes that the court should have 6 compared the victim's mental trauma to that "normally" experienced by victims of rape. The offense charged was carjacking; the use of rape as a means to control and terrorize the victim contributed to the unusual degree of mental injury inflicted on the victim as a result of the charged offense. -19- Defendant misapprehends the guideline. In calculating the sentencing range for the carjackings, the court properly refrained from assessing a five level enhancement for the brandishing of a firearm during the offense. See United States v. McCarthy, 77 F.3d 522, 536 ___ _____________ ________ (1st Cir. 1996), cert. denied, 117 S. Ct. 479, 771 (1997). ____________ This resulted in a guideline range for the carjackings of 210-262 months. Adding the mandatory 60-month consecutive sentence for the violation of 18 U.S.C. 924(c), produced a total sentence of only 322 months. By contrast, had there been no separate count of conviction under 18 U.S.C.  924(c), the enhancement for brandishing the weapon would have increased the guidelines calculation of the carjacking sentence alone to a level of 42, (360 months to life). This computational anomaly justified an upward departure -- subject, of course, to an adjustment for the statutory maximum. Defendant's opposite reading of Application note 2, as requiring a decrease in the maximum penalty for the carjackings to offset the 60-month consecutive sentence for the firearms offense,7 also ignores the court's broad 7  ____________________ 7This interpretation may be rooted in a mistaken 7 understanding of the double jeopardy clause. While defendant does not directly argue the point here, in a previous appeal he argued that the firearms charge should be dismissed before trial because it violated the prohibition against multiple punishment. The earlier appeal was dismissed on jurisdictional grounds. United States v. Ramirez-Burgos, 44 ______________ ______________ -20- discretion. That a district court may consider lowering a ___ guidelines sentence to offset a consecutive statutory minimum in some circumstances does not mean that it is required to do so. United States v. Webster, 54 F.3d 1, 4 (1st Cir. 1995). _____________ _______ In sum, there was no abuse of discretion in the two upward departures. Both were well explained and grounded in record facts. See United States v. Twitty, 104 F.3d 1, 2 ___ _____________ ______ (1st Cir. 1997); United States v. Quinones, 26 F.3d 213 (1st _____________ ________ Cir. 1994). While the court did not separately specify the extent of each, the oversight was harmless. But for the statutory maximum, a five-level increase was warranted under the Application note to 2K2.4 alone, bringing the penalty range to 360 months to life.   ____________________ F.3d 17 (1st Cir. 1995); see also United States v. Stoller, ________ _____________ _______ 78 F.3d 710, 715 & n.2 (1st Cir. 1996) (indicating uncertainty about the continued vitality of the jurisdictional ruling), cert. dismissed, 117 S. Ct. 378 ________________ (1996). Double jeopardy's prohibition against multiple punishments, however, only prevents the imposition of a stiffer sentence than the legislature intended. United ______ States v. Page, 84 F.3d 38, 41 (1st Cir. 1996). Congress ______ ____ clearly intended that a term of incarceration under 924(c) should be in addition to the punishment provided in 18 U.S.C. 2119. See United States v. Centeno-Torres, 50 F.3d 84, 85 ___ _____________ ______________ n.2 (1st Cir.) (citing additional cases), cert. denied, 116 ____________ S. Ct. 208 (1995); cf. United States v. Gonzales, 513 U.S. ___ _____________ ________ 132, --- (1997) (observing that Congress "has made clear its desire to run 924(c) enhancements consecutively to all other prison terms, [even] regardless of whether they were imposed under firearms enhancement statutes similar to  924(c).").  -21- However, since the statutory maximum for the highest count of conviction on the carjackings is 300 months, we must vacate so much of the sentence as reflects a higher concurrent term for Counts One and Two. The mandatory consecutive 60-month sentence for the firearms offense brings the permissible total sentence for all three counts to 360 months.  The judgment of conviction is affirmed. The ________ sentence on Counts One and Two is vacated and remanded to the _______ district court with directions that the court enter a sentence in accordance with this decision. In all other respects, the sentence is affirmed. ________ -22-